STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven R. HECHT, Defendant-Appellant.†

Court of Appeals

*No. 82–769–CR.  Submitted on briefs November 1, 1982.—*
*Decided February  22, 1983.*
(Also reported in 331 N.W.2d 639.)

---

† Petition to review granted.

For the defendant-appellant the cause was submitted on the brief of *Dale T. McKenna* of *McKenna Law Offices* of Jefferson.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN J.   This is a narcotics case where Hecht claims the state cannot make the mere "directing to or recommending of" a source of supply tantamount to being a party to an eventual narcotics sale.  Although we agree with his argument as far as it goes, the evidence shows that Hecht's activities amounted to much more than a mere recommendation of a source.  For that reason, we affirm his conviction as a party to the crime.

Steven Hecht was convicted of being a party to the crime of possession of a controlled substance with intent to deliver, contrary to secs. 161.41(1m) and 939.05, Stats.  In September 1978, John Heidecker, an undercover drug agent, met Steven Hecht and Donald Grove.  At the meeting, Heidecker asked Hecht if he had any drugs for sale.  Hecht subsequently sold him twenty-five dollars worth of cocaine.  The next day, Heidecker returned

seeking to make an additional purchase. Hecht replied that he had no cocaine, the earlier sale having been from a small amount he had for personal use. Heidecker related that he had a friend that wanted to make a substantial cocaine purchase. The friend turned out to be William Malone, a second undercover agent. Hecht testified that Heidecker offered him $1,700 to put him in touch with someone who could sell him $10,000 worth of the drug. Heidecker, however, testified that it was not his practice to offer money to other than those who had the cocaine.

Hecht testified that he called Virgil Vollmer to determine whether he knew a source of a large quantity of the substance. Hecht stated that he contacted Vollmer because he thought Vollmer used the drug and because he had earlier received a small amount of cocaine from him.

On October 2, Heidecker had a telephone conversation with Hecht and Grove. Hecht testified that Vollmer had indicated a selling price of $2,000 per ounce and that he relayed this information. That evening, Heidecker and Malone followed Hecht and Grove to the Vollmer home. Hecht and Heidecker went inside. Malone and Grove stayed outside in their cars.

Once inside the home, Vollmer, Hecht and Heidecker went to the basement. Vollmer told Heidecker that he was expecting a phone call from the supplier. The phone call came, and Vollmer told Heidecker that no deal could be made that evening. He asked whether Heidecker might like to wait another hour so that Vollmer could contact another source. Heidecker went to the car and relayed this information to Malone, who decided that they should not wait.

On October 3, Heidecker again called Grove and Hecht. Heidecker testified that prices were discussed during the conversation. That evening, Heidecker and Malone

met with Hecht at a bar. Malone and Heidecker again followed Hecht to the Vollmer residence. As the previous night, Hecht, Vollmer and Heidecker went inside while Malone waited in his car.

Vollmer received a phone call about 9:30 p.m. and informed Heidecker that the cocaine was on its way. After the telephone call, Vollmer and Heidecker went out to the car to talk to Malone. Malone showed them $10,000 in cash. Hecht remained in the house during these discussions.

Vollmer and Heidecker went back inside, and a second telephone call was received. The conversation was to confirm that the sale would be made. Hecht was present when the call came but did not engage in the negotiations for the purchase. Rather, Heidecker conversed, through Vollmer, with the person on the other end of the line. Hecht did not know who the caller was. The source indicated he was charging $2,000 per ounce for the cocaine. Heidecker left, told Malone of the scheduled meeting, and said they were all to go their separate ways until later in the evening.

At about twelve midnight, Heidecker and Malone drove to the place where the meeting was to occur. They met a car carrying Vollmer and Hecht. It was agreed that Hecht would not accompany the others to the place of the sale because the source did not want anyone unnecessary to see him.

Vollmer, Malone and Heidecker proceeded to the prearranged place. A few minutes later, Daniel Kohls entered the car and produced the cocaine. After the arrest signal was given, Kohls and Vollmer were taken into custody. Hecht was arrested a short time later at a nearby bar. Hecht was subsequently charged and convicted of being a party to the crime of possession of cocaine with intent to deliver.

If Hecht's conviction is to stand, it is because he either aided and abetted the crime or entered into a criminal conspiracy. The pertinent parts of the party-to-a-crime statute, sec. 939.05(2), Stats., are set forth as follows:

(2) A person is concerned in the commission of the crime if he:

. . .

(b) Intentionally aids and abets the commission of it; or

(c) Is a *party to a conspiracy with another* to commit it or advises, hires, counsels or otherwise *procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime.* This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw. [Emphasis added.]

The state, in its brief, does not strenuously argue that Hecht directly committed the crime or that he aided or abetted its commission. Rather, the state focuses on the language contained in the conspiracy subsection, sec. 939.05(2)(c). The argument runs that Hecht conspired to commit or "procured" Kohls to commit the crime of *delivery* of a controlled substance and that *possession with intent to deliver is* "[an]other crime which [was] committed in pursuance of the intended crime and [was] under the circumstances . . . a natural and probable consequence of the intended crime." The state concludes that upon abstracting the plain meaning of the statute, Hecht was properly convicted. The state cites no case which has discussed in detail the "advises, hires, counsels or otherwise procures" language of the statute, and we are aware of none.

The defendant, on the other hand, submits that a person who acts solely on behalf of the buyer and only goes so far as to recommend or direct a buyer to a source of supply cannot be subjected to party-to-a-crime liability.

We agree with defendant's general statement. The common thread that runs through cases which have upheld party-to-a-crime liability under sec. 939.05(2)(c), Stats., is that it is appropriate to find all responsible when two or more individuals act together, in some manner, to achieve a joint criminal objective. For example, in *State v. Nutley*, 24 Wis. 2d 527, 129 N.W.2d 155 (1964), an officer was shot and wounded after he and his partner stopped an automobile carrying three men. Though only one of the occupants fired at the officer, the court said that all three were responsible under the conspiracy subsection because the evidence supported the conclusion they had entered into an agreement to resist any apprehension by the officers, by force if necessary. Because the defendants agreed to, and did, further a common criminal purpose, each was liable for the shooting.

Similarly, in *Hawpetoss v. State*, 52 Wis. 2d 71, 187 N.W.2d 823 (1971), two individuals were charged with theft from the person. The property was taken by one of the participants when the victim passed out. On appeal, the other participant argued he should not be convicted because he did not remove the property from the victim's person. The court disagreed, stating it was proper to convict the defendant under either the aiding and abetting or conspiracy theory. The court said the conspiracy subsection was applicable because the circumstantial evidence, while insufficient to show an express agreement between the parties, was ample to prove the participants had at least a tacit understanding to accomplish the *common purpose* of taking the complainant's property.

Unlike the criminal activity present in *Nutley* and *Hawpetoss,* all persons involved in a drug transaction do not act to further the same criminal objective. The seller's purpose is to dispose of the substance at a profit, the buyer's to acquire possession. For this reason, courts in other jurisdictions that have considered the question have ruled that one who acts *solely* on behalf of an anxious buyer by seeking and finding a supplier, and does nothing further, should not be convicted of being associated with the seller's consequent criminal activity. Two cases are illustrative.

In *Bowles v. State,* 579 S.W.2d 596 (Ark. 1979), the defendant was approached by an undercover agent. The agent asked the defendant if he knew where large quantities of marijuana might be purchased. The agent subsequently purchased the marijuana from a person named by the defendant. Though the defendant was not involved in the transaction, when contacted by the supplier, he confirmed that the agent was "all right." The defendant was charged and convicted of being a party to the seller's act under an Arkansas statute which provides that a person is an accomplice of another in the commission of an offense if, with the purpose of promoting or facilitating an offense, he solicits, advises or encourages the other person to commit it, or aids, agrees to aid or attempts to aid the other person in planning or committing it. The court reversed the conviction. Noting that all the defendant did was to introduce the agent to the seller and to advise the supplier it was safe to deal, the court concluded the evidence was insufficient to show that the defendant was not acting only on behalf of the purchaser or in his interest.

Similarly, in *U.S. v. Moses,* 220 F.2d 166 (3rd Cir. 1955), the defendant was convicted of being a party to the seller's acts under a statute which provides that one who aids, abets, counsels, induces or procures the com-

mission of an offense is a principal. The evidence showed that undercover agents came to the defendant's apartment and inquired whether she knew where they could purchase drugs. She replied that although she did not have any, her supplier would be over shortly. She stated that she would be able to arrange for the agents to get some drugs from him. When the supplier arrived, the defendant told him that she believed the agents were "all right." The source and the agents left, and a deal was consummated outside the presence of the defendant.

On appeal, the court said that there was nothing to show that the defendant was associated in any way with the enterprise of the seller. Rather, she was merely a customer who introduced the prospective buyers, at their request, to a source of narcotics. The court concluded that because there was no collaboration, association or community of scheme between the defendant and principal, reversal was required.

For two reasons, the reasoning used in these cases is persuasive. First, we find it consistent with the underlying theory of party-to-a-crime liability as discussed in *Nutley* and *Hawpetoss, i.e.,* that one is a party to a crime under sec. 939.05 (2) (c), Stats., only if he acts, in some manner, to further a common purpose with the principal. Second, this reasoning was implicitly accepted in *State v. Boutch,* 60 Wis. 2d 397, 400, 210 N.W.2d 751, 753 (1973). In *Boutch,* the defendant had a conversation with another concerning his assisting her in the sale of some drugs. Shortly after the conversation, the defendant returned and introduced a prospective buyer. The buyer turned out to be an undercover agent, and there was evidence that the defendant actively sought him out to interest him in the purchase.

On appeal, the defendant argued that he was acting on behalf of the buyer (the state agent) and not on

behalf of the seller, and, therefore, he was not in a position to aid and abet the sale. The court rejected the argument. The basis for its ruling, however, was not that any participation in the transaction makes a defendant responsible for the seller's acts, but rather that the contention he was acting solely as an agent of the buyer was contrary to the evidence; the court said that the jury could reasonably have inferred that there existed a prior arrangement between the defendant and seller as to his efforts in aiding her to make a sale. *Boutch* provides implicit support for the position discussed in *Bowles* and *Moses* because if the status of Wisconsin law was that a defendant is concerned with the seller's activity even when he acts solely on behalf of the buyer, the court would not have deemed it necessary to look to the record to determine whether the defendant's position was supported by the evidence.

Although defendant's general statement of the law is, in our view, correct, he does not fit into the category of a buyer's agent who merely recommends or directs a party to a source.

It is true that Hecht never met Kohls. To support the conclusion that a person has been a party to a conspiracy, however, it is not necessary to prove the participants knew one another. *O'Neil v. State*, 237 Wis. 391, 404–05, 296 N.W. 96, 102 (1941). A mere tacit understanding between conspirators to work toward a common purpose is all that is essential; if there is a meeting of the minds, brought about in any way, the guilty combination is actionable. *Id.* Under sec. 939.05 (2) (c), Stats., if a person is found to have been a party to a conspiracy or procured another to commit the crime, the party is responsible not only for the intended crime but also for any crime which, under the circumstances, was a natural and probable consequence of the intended crime.

Whether the act committed was the natural and probable consequence of the act encouraged is a question of fact for the jury. *State v. Asfoor,* 75 Wis. 2d 411, 431, 249 N.W.2d 529, 537–38 (1977). In view of these principles, the conviction must be upheld.

In this case, Hecht procured Vollmer, who in turn contacted the source. Hecht was present when important telephone calls were made setting up the sale. He made certain that Vollmer and the buyers stayed connected. He had an interest in the consummation of the sale because then he would receive $1,700 from the buyers. Therefore, even though he never met Kohls, it can be inferred that Kohls knew of Hecht's procuring him through Vollmer and knew of Hecht having a hand in the transaction. Even though there was no ongoing arrangement with Kohls, such as a partnership, agency or financial relationship, there is evidence of a tacit agreement toward the realization of a criminal purpose. He involved himself way beyond merely recommending or directing the buyers to a source. Because Hecht was so connected to the principal crime, he is responsible for any crime committed which is a natural and probable consequence. The jury could have concluded either that Hecht was a party to an agreement to deliver drugs or that he acted to procure another to make a delivery.

*By the Court.*—Judgment affirmed.