STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven R. HECHT, Defendant-Appellant-Petitioner.

Supreme Court

No. 82–769–CR. Argued December 1, 1983.—
Decided January 31, 1984.

(Also reported in 342 N.W.2d 721.)

606

For the defendant-appellant-petitioner there were briefs by *Dale T. McKenna* and *McKenna Law Offices,* Jefferson, and oral argument by *Dale T. McKenna.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   This review concerns a published decision of the court of appeals[1] which affirmed a conviction in the circuit court for Walworth county, Honorable John J. Byrnes, Circuit Judge. The defendant, Steven R. Hecht, was found guilty by a jury of being a party to the crime of possession of a controlled substance with the intent to deliver, contrary to secs. 161.41(1m)(b) and 939.05(1), Stats. We affirm the court of appeals.

In September of 1978, undercover agent John Heidecker contacted defendant Hecht and Donald Grove. At the meeting, Heidecker asked Hecht if he had any drugs to sell. The defendant subsequently sold him twenty-five dollars worth of cocaine. The following day, Heidecker returned, attempting to make an additional purchase. Hecht stated that he had no cocaine because he had sold Heidecker all of the small amount that he had for his own personal use. Heidecker told the defendant that he had a friend who wanted to make a substantial cocaine purchase. The friend was William Malone, also an undercover agent. The defendant testified that Heidecker offered him $1,700 for contacting a supplier who could sell him this large quantity of the drug; although Heidecker's testimony was inconclusive on this point, he did testify that it was not his practice to offer money to anyone but the seller of the drug.

Hecht testified that he called Virgil Vollmer to ask if Vollmer knew a source who could supply a large quantity of cocaine. He also stated that he chose Vollmer because he thought Vollmer used cocaine and because he had previously received a small amount of cocaine from Vollmer.

On October 2, 1978, agent Heidecker telephoned Hecht. The defendant told Heidecker that Vollmer had indicated

---

[1] *State v. Hecht*, 112 Wis. 2d 28, 331 N.W.2d 639 (Ct. App. 1983).

a price of $2,000 for the drug, which Vollmer claimed was set by his Madison source. Heidecker arranged to meet Hecht at the garage where the defendant worked that same evening. Heidecker and agent Malone met with the defendant and Grove briefly at the garage and agreed to follow the defendant's car to the Vollmer residence in Fort Atkinson, Wisconsin. After reaching the residence, Grove and Malone remained in the cars while Hecht and Heidecker entered the home. The defendant introduced Heidecker to Vollmer, and the three men went into the basement. There, Vollmer and Heidecker discussed the particulars of the cocaine deal in the defendant's presence. Vollmer told Heidecker that he expected a phone call from his supplier. Hecht testified that he did not know who the caller would be. Subsequently, the phone call came, and Vollmer told Heidecker that there could be no exchange that evening. Vollmer, however, offered to contact another source if Heidecker was willing to wait for another hour. The defendant also testified that he did not know the identity of this second potential source. After conferring with Malone, Heidecker declined making a deal with the second supplier that same evening.

On October 3, 1978, Heidecker again called the garage and spoke with both Hecht and Grove. Heidecker testified that both men stated that "they had put the deal together" and that Hecht related prices for five ounces of cocaine: $2,000 an ounce from one source and $2,200 an ounce from another. Heidecker and Malone later met Hecht at a tavern in Jefferson county, as they had previously agreed. Grove had been left out of the meeting because he appeared to Heidecker to be extremely nervous.

Once again, Heidecker and Malone followed the defendant to Vollmer's home. Again, Heidecker accompanied Hecht into the house while Malone remained behind in the car. Vollmer received a phone call at approximate-

ly 9:30 p.m. and told Heidecker that the cocaine was on the way. Vollmer and Heidecker went out to the car to speak with Malone, who showed them $10,000 in cash. The defendant remained inside the house during this discussion.

Vollmer and Heidecker then returned to the house, where a second phone call was received, confirming the fact that the exchange would indeed take place. The defendant was present during the phone conversation, but did not participate in the negotiations. Heidecker made arrangements through Vollmer with Vollmer's source. The price was set at $2,000 per ounce of cocaine. The defendant again testified that he did not know who the caller was. Heidecker left the house, told Malone of the scheduled meeting which was to take place at midnight in Whitewater, Wisconsin, and the two of them left until that time.

At midnight, Heidecker and Malone drove to a pre-arranged location in Whitewater. At the parking lot adjacent to the lot where the exchange was to take place, the agents met a car driven by Vollmer. Hecht was a passenger in Vollmer's car. As Heidecker approached Vollmer's car, Hecht got out and left the area. Heidecker testified that while at Vollmer's house, Vollmer had stated that his source did not want to see anyone other than Heidecker when the exchange was made. It was agreed, then, that Hecht would not be present when the sale was made.

Heidecker then entered Vollmer's car, and the two of them drove to the adjacent parking lot, followed by agent Malone. They were there approximately three to four minutes when Daniel Kohls approached Vollmer's car. He rapped on the window, entered the car, and produced two clear plastic bags containing cocaine. Heidecker left the bags on the car console, stating that he was going to get the money. He then left the car, entered Malone's

car, and Malone gave a signal for the arrest. Agent Frank Wingert arrested Hecht a short time later in a nearby bar.

A jury trial was commenced on December 21, 1981. On December 22, the jury found the defendant guilty of being a party to the crime of possession of a controlled substance with the intent to deliver. The defendant appealed his conviction to the court of appeals, arguing that the mere "directing to or recommending of" a source of supply is not sufficient to sustain a conviction for being a party to a narcotics exchange. The court of appeals affirmed his conviction, however, stating that Hecht had involved himself much beyond the point of merely recommending or directing the buyers to a source of the drug. The court found that the jury could have reasonably concluded that the defendant was a party to an agreement to deliver drugs or that he acted to procure another to make such a delivery, because of his continued involvement in bringing about the sale.

This court, then, is faced with two issues on appeal. These issues are: (1) Should this court recognize a "procuring agent of the buyer" defense to the crime of party to the possession of a controlled substance with intent to deliver, contrary to secs. 161.41(1m) and 939.05, Stats., and (2) was the evidence sufficient to sustain the defendant's conviction under these statutes?

## I.

SHOULD THE WISCONSIN COURTS RECOGNIZE A "PROCURING AGENT OF THE BUYER" DEFENSE TO THE CRIME OF PARTY TO THE POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER, CONTRARY TO SECS. 161.41(1m) AND 939.05, STATS.?

As was stated above, the defendant was convicted as a party to possession with intent to deliver a controlled

substance, in violation of secs. 161.41(1m) and 939.05, Stats. Section 161.41(1m) provides:

"Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance. . . ."

The defendant argues that his conviction under sec. 161.41(1m), Stats., as a party to the crime, cannot be sustained because his conduct falls squarely within that of the appellant described in *United States v. Moses,* 220 F.2d 166 (3rd Cir. 1955). In *Moses,* the appellant introduced federal agents to a seller of drugs and also vouched for the agents' reliability. *Id.* at 168. She was not associated in any way with what occurred past this point. In that case, even though a sale of drugs eventually transpired, the court concluded that Moses' conduct was insufficient to convict her as party to the crime of *selling,* contrary to 18 U.S.C.A. sec. 2 and 26 U.S.C.A. sec. 2554. Therefore, Hecht argues that his conduct in the instant case is insufficient to sustain a conviction for party to the crime of possession with intent to deliver under the corresponding Wisconsin statutes.

However, it is clear to us that *Moses* and its precursor, *United States v. Sawyer,* 210 F.2d 169 (3rd Cir. 1954), were decided prior to the 1970 enactment of the federal "Controlled Substances Act," which appears at 21 U.S.C.A. sec. 801 (West 1981).[2] Before the enactment of the Controlled Substances Act, federal law recognized two separate and distinct offenses for transactions in controlled substances. The separate offenses consisted of buying and of selling. *See,* 26 U.S.C.A. secs. 2553 and 2554 (I.R.C. 1954). The *Moses* decision noted this distinction:

---

[2] The United States States Congress enacted the Controlled Substances Act under Pub. L. 91–513, 84 Stat. 1242.

"Therefore, a participant in a particular transaction must be punished either as a seller or as a buyer. There is no general offense of participation in the transaction viewed as a whole."

*United States v. Moses,* 220 F2d at 168. It is clear to us that Moses' conduct could not support a conviction for *selling* when she was acting on behalf of the *buyers* and when prior federal law did not recognize the offense of participation in the transaction. Of course, the *Moses* court did not address the issue of whether the appellant's conduct would have been sufficient to support a conviction for participation, had federal law recognized such an offense.

The federal Controlled Substances Act brought about numerous changes in the law. 21 U.S.C.A. sec. 841 (West 1981) provides:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . ."

Utilizing the language of 21 U.S.C.A. sec. 841(a)(1), the federal courts have addressed the issue of whether the "procuring agent of the buyer" or "purchasing agent" theory has survived this change in the federal law and remained a viable defense. In *United States v. Pruitt,* 487 F.2d 1241 (8th Cir. 1973), the defendant argued on appeal that the trial court had erred by its refusal to instruct the jury on this defense. The *Pruitt* court noted that the procuring agent defense was relevant under the prior statutes because of the separate treatment of the offenses of buying and selling controlled substances. However, after referring to the *Moses* opinion, the court stated the following:

"These prior concepts have been discarded in the Controlled Substances Act which contains no sale or buying

requirement to support a conviction; there is now an offense of participation in the transaction viewed as a whole. The Comprehensive Drug Abuse Prevention and Control Act of 1970 is extremely broad in scope, no longer restricted to the narrower concepts of buy and sell, but all inclusive in covering the entire field of narcotics and dangerous drugs in all phases of their manufacturing, processing, distribution and use. . . . Any individual who participates in any manner in the unauthorized distribution of such 'controlled substances' is amenable to the Act and the sanctions provided therein. Congress undoubtedly intended by this new Act to make an all-out attempt to combat illicit drugs by subjecting any individual who knowingly participates in the distribution to substantial, and in some cases severe, penalties while dealing less severely with, and attempting to aid, the unfortunate individuals who are the ultimate users of the illicit drugs." *Pruitt,* 487 F.2d at 1245 (citation omitted).

Subsequent federal decisions, including those of the seventh circuit, have affirmed this concept of viewing participation in the transaction as an offense under the statute. *See, United States v. Banks,* 687 F.2d 967, 977–78 (7th Cir. 1982); *United States v. Winston,* 687 F.2d 832, 835–36 (6th Cir. 1982); *United States v. Tucker,* 552 F.2d 202, 204 (7th Cir. 1977); and *United States v. Snow,* 537 F.2d 1166, 1168–69 (4th Cir. 1976).

Other federal decisions have focused on the definitions of the terms "deliver" and "distribute," as set forth in 21 U.S.C.A. sec. 802 (West 1981):

" . . .
"(8) The terms 'deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship.
" . . .
"(11) The term 'distribute' means to deliver . . . a controlled substance. The term 'distributor' means a person who so delivers a controlled substance."

The eighth circuit utilized these definitions to uphold a conviction under 21 U.S.C.A. sec. 841(a)(1) in *United*

*States v. Collins,* 552 F.2d 243 (8th Cir. 1977). In that case, the appellant claimed that his conduct as a "conduit" in a heroin sale was insufficient to support his conviction under the statute. The court found that the appellant "was affirmatively involved in the transaction itself," even though he did not sell the drug, and that his conduct fit within the statutory definition of a delivery or distribution of a controlled substance.[3] The *Collins* court also noted that all circuits which had addressed similar arguments had concluded that such conduct facilitating an exchange could indeed result in a conviction for distribution of a controlled substance under 21 U.S.C.A. sec. 841(a)(1). *Id.,* 552 F.2d at 246, citing *United States v. Snow,* 537 F.2d at 1169; *United States v. Marquez,* 511 F.2d 62, 64 (10th Cir. 1975); *United States v. Oquendo,* 505 F.2d 1307, 1310 (5th Cir. 1975); *United States v. Pierce,* 498 F.2d 712 (D.C. Cir. 1974); *United States v. Pruitt,* 487 F.2d 1241; *United States v. Hernandez,* 480 F.2d 1044 (9th Cir. 1973); and *United States v. Masullo,* 489 F.2d 217 (2d Cir. 1973).

Therefore, we must conclude that after reviewing the federal cases, it appears that all circuits which have addressed the issue have concluded that the "procuring agent" theory is no longer a valid defense under the federal law. This is because the federal statutes no longer treat buying and selling as a separate offense; therefore, the courts instead look to a defendant's participation in the transaction to determine whether or not an offense has been committed. Also, the language of 21 U.S.C.A. sec. 802(8) and (11), dealing with delivery

---

[3] An informant for the federal drug enforcement agency had telephoned the appellant in order to arrange a meeting with a Donnell Pickens. Subsequently, the informant, a special agent, and the appellant drove to a residence, where Pickens arrived and an exchange was made. The appellant tested the drug, received the money from the informant, and gave it to Pickens. *Id.,* 522 F.2d at 245.

and distribution in terms of the "actual, constructive, or attempted transfer," regardless of an agency relationship between the defendant and the seller, lends further support to the conclusion that participation in a transaction involving controlled substances in any manner may potentially constitute an offense under the federal statutes.

This court is aware that the language of sec. 161.41 (1m), Stats., is very similar to that of 21 U.S.C.A. sec. 841(a)(1). We also note that the Wisconsin statutory definitions of delivery and distribution of a controlled substance are virtually identical to those of the federal statutes. Section 161.01 provides:

" . . .

"(6) 'Deliver' or 'delivery' means the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is any agency relationship.
" . . .

"(9) 'Distribute' means to deliver . . . a controlled substance.

"(10) 'Distributor' means a person who distributes."

We recognize that this is due to the fact that Wisconsin's statutes dealing with controlled substances are based upon the Uniform Controlled Substances Act. Laws of 1971, ch. 219, sec. 16, effective October 1, 1972. The Uniform Controlled Substances Act was approved by the National Conference of Commissioners on Uniform State Laws in 1970.[4] Its purpose has been characterized as follows:

"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legis-

[4] This act replaced the 1933 Uniform Narcotic Drug Act and the 1966 Model State Drug Abuse Control Act. Uniform Controlled Substances Act, 9 U.L.A. 188 (1979).

lation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem." Uniform Controlled Substances Act, 9 U.L.A., Commissioners' Prefatory Note, p. 188 (1979).

This court notes that almost every jurisdiction has now adopted some form of the act. 9 U.L.A., 1983 Cumulative Annual Pocket Part, p. 78. When we review the decisions of those states which have adopted the act, we find that a majority of the jurisdictions have held that the procuring agent theory is no longer a valid defense.[5]

Based upon the similarity of the Wisconsin and federal statutes and the fact that this state has adopted in part the Uniform Controlled Substances Act, we hold that the procuring agent theory is not a valid defense in this state.[6] Our statutes, like the federal statutes, no longer

[5] *See, State v. Carter,* 636 S.W.2d 183, 184–45 (Tenn. 1982); *Banks v. State,* 654 P.2d 631, 632 (Okla. Crim. App. 1982); *Hindman v. State,* 647 P.2d 456, 457–58 (Okla. Crim. App. 1982); *State v. McKeown,* 23 Wash. App. 582, 596 P.2d 1100, 1104–05 (1979); *State v. Casias,* 567 P.2d 1097, 1099–1100 (Utah 1977); *People v. Atchley,* 97 Ill. App. 3d 85, 422 N.E.2d 266, 268–69 (1981); *State v. Kelsey,* 58 Hawaii 234, 566 P.2d 1370, 1373–74 (1977); *People v. Harrison,* 71 Mich. App. 226, 247 N.W.2d 360, 360–61 (1976); and *Fant v. State,* 258 Ark. 1015, 530 S.W.2d 364, 365 (1975). Iowa is the only jurisdiction of which we are aware that recognizes this defense, in spite of its adoption of the act. *See, State v. Lott,* 255 N.W.2d 105, 107 (Iowa 1977).

[6] The court of appeals found that *State v. Boutch,* 60 Wis. 2d 397, 210 N.W.2d 751 (1973), implicitly recognized the procuring agent defense. *State v. Hecht,* 112 Wis. 2d at 35–36. The court of appeals apparently based this finding upon the fact that the *Boutch* court studied the record to determine whether or not the evidence supported the defendant's claim that he acted solely on the buyer's behalf. "Defendant's claim that he acted solely as an agent of the state in the purchase of the 'meth' is contrary to the evidence." *State v. Boutch,* 60 Wis. 2d at 400. The court of appeals concluded that the *Boutch* court would not

distinguish between buying and selling as separate offenses. Rather, the statute instead addresses the act of possession with the intent to deliver, with no mention of the terms buying and selling. The transfer itself has become the prohibited act, and participation in this transfer may amount to an offense. This is evidenced by the language of sec. 161.01(6), defining "delivery" in terms of the "actual, constructive or attempted transfer" of a controlled substance. There is no mention of the requirement of buying or selling. Accordingly, we hold that the procuring agent defense will not be recognized by this court.

## II.

WAS THE EVIDENCE SUFFICIENT TO CONVICT THE DEFENDANT AS A PARTY TO THE CRIME OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, CONTRARY TO SEC. 161.41(1m) AND SEC. 939.05, STATS.?

Section 939.05, Stats., provides:

"**939.05 Parties to Crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

---

have found it necessary to study the record and make such determination had it not recognized the procuring agent theory of defense. However, we find that the *Boutch* case was decided under the statutes that existed prior to Wisconsin's adoption of the Uniform Controlled Substances Act. Thus, the same arguments pertaining to *Moses* and the federal law hold true for *Boutch* and the Wisconsin statutes.

"(a) Directly commits the crime; or
"(b) Intentionally aids and abets the commission of it; or
"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. . . ."

In this case, the jury was instructed on all three alternative theories of party to a crime liability. We are faced, then, with the issue of whether or not the evidence is sufficient to convict the defendant of party to the commission of the crime under sec. 939.05(2)(b) or (c), Stats. The testimony indicates that the defendant was not present when the actual exchange was made between Kohls and agent Heidecker; therefore, he clearly did not directly commit the offense under sec. 939.05(2)(a). Rather, to sustain a finding of guilty, the jury must have found that Hecht intentionally aided and abetted the commission of the crime or was party to a conspiracy to commit the offense.

Because this case concerns a challenge to the sufficiency of the evidence to support the party to a crime finding, the following rules apply:

"Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them. The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence

is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules." *Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971).

*See also, State v. Charbarneau,* 82 Wis. 2d 644, 650–51, 264 N.W.2d 227 (1978).

The Wisconsin case law is very clear that the jury need not unanimously agree as to in which of the alternative ways a defendant has committed an offense under the party to a crime theory. Rather, the jury must unanimously agree as to the defendant's *participation in the crime. May v. State,* 97 Wis. 2d 175, 190, 293 N.W.2d 478 (1980), and *Holland v. State,* 91 Wis. 2d 134, 143–44, 280 N.W.2d 288 (1979). This is because there is a single offense under sec. 161.41(1m), Stats., possession of a controlled substance with intent to deliver, and three alternative ways for which the defendant could be found liable for the commission of this offense under the party to a crime theory: By direct commission, by aiding and abetting, or by conspiracy. *Holland v. State,* 91 Wis. 2d at 144. As we have already stated, this case only involves the latter two of the three alternative methods.

The first of these alternatives under the statute involves aiding and abetting the commission of the crime. This court dealt with the principle of aider and abettor liability in the recent decision of *State v. Sharlow,* 110 Wis. 2d 226, 327 N.W.2d 692 (1983). The *Sharlow* opinion contained the following discussion:

" 'Aiding and abetting has been explained in *Hawpetoss v. State,* 52 Wis. 2d 71, 187 N.W.2d 823 (1971). Therein

we defined those "concerned in the commission" of a crime and stated:

" ' "The elements of complicity, or aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance." (at 78)

" 'In that same case we pointed out that, where one person *knew* the other was committing a criminal act, he should be considered a party thereto when he acted in furtherance of the other's conduct, *was aware* of the fact that a crime was being committed, and acquiesced or participated in its perpetration. See also *State v. Nutley,* 24 Wis. 2d 527, 129 N.W.2d 155 (1964) ; *State v. Haugen,* 52 Wis. 2d 791, 191 N.W.2d 12 (1971) ; *Taylor v. State,* 55 Wis. 2d 168, 197 N.W.2d 805 (1972) ; and *State v. Cydzik,* 60 Wis. 2d 683, 211 N.W.2d 421 (1973). These cases hold that defendants may be found guilty of being concerned in the commission of a crime if, between them, they perform all the necessary elements of the crime with *mutual awareness* of what the other is doing. It is not necessary that each defendant be present at the scene of the crime.' " *State v. Sharlow,* 110 Wis. 2d at 240, citing *Roehl v. State,* 77 Wis. 2d 398, 407–08, 253 N.W.2d 210 (1977). (Emphasis added.)

*See also, State v. Balistreri,* 106 Wis. 2d 741, 758, 317 N.W.2d 493 (1982) ; *Holland v. State,* 91 Wis. 2d at 141; and *State v. Charbarneau,* 82 Wis. 2d at 651–53.

Hecht has argued on appeal that he cannot be guilty as a party to the crime of possession with the intent to deliver because he merely directed agent Heidecker to a potential source of cocaine. After reviewing the record, we find that the defendant did not merely recommend a source to the agents and then withdraw himself from all later occurrences. His testimony indicates that he did in fact call Vollmer because he believed that Vollmer would be able to obtain the drug for the agents. His action did not stop after this contact. He found out the price of the

cocaine from Vollmer, and he testified that he communicated this price to Heidecker. Hecht also took the agent to Vollmer's Fort Atkinson residence and introduced agents Heidecker and Malone to Vollmer. He accompanied Vollmer and Heidecker into the basement of the house and was present during a phone call, after which Vollmer informed the agent that his previous source would not be able to make a deal that night.

However, his participation continued well past this introduction between the agent and Vollmer. The following day, Heidecker spoke with Hecht and arranged to meet with him at a tavern in Jefferson county. Heidecker testified that Hecht told him that he and Grove "had put the deal together," to take place that night, and that Hecht quoted two prices for the cocaine. After meeting at the tavern, Hecht once again accompanied the agents to Vollmer's house, Hecht leading the way in his car while Heidecker and Vollmer followed in a second car. Hecht accompanied Heidecker and Vollmer into the house and was present during the two phone calls which confirmed the details of the coming exchange. He also accompanied Vollmer in Vollmer's car to the parking lot adjacent to the prearranged meeting place for the exchange, where Hecht then left because the Madison source did not want to be seen by anyone except those directly involved in the exchange. Approximately three minutes after Hecht left, Kohls came up to Vollmer's car, entered the car, and the exchange between Heidecker and Kohls was completed.

It is not always an easy task to define what degree of conduct is needed to satisfy a charge of aiding and abetting. "Drawing an exact line of sufficient participation, especially in drug distribution cases, is difficult if not impossible." *United States v. Winston,* 687 F.2d at 834. However, once a defendant moves past the point of merely directing the buyer to a potential source, the likelihood that criminal liability will attach begins to escalate.

"It is only when the directing or recommending takes on a wider scope or becomes a part of more widespread activities that any real chance of criminality arises. The criminality of such acts begins to for.n as one moves along a continuum from a single, casual naming of another as a possible source of illicit drugs, through introducing another to the seller, to accompanying another to a meeting with the seller during which the sale takes place, through handling the narcotics and sharing in the proceeds of the sale." Annot., 42 A.L.R.3d 1072, 1075 (1972).

That this problem is a difficult one is indicated by the varying degrees of conduct required to sustain a conviction in the numerous jurisdictions which have addressed it.[7]

Although Hecht's conduct was not located at that extreme end of the continuum at which the defendant is present at the transfer, handling the narcotics and sharing in the proceeds, it is clear to us that the defendant's conduct satisfies this court's criteria of aiding and abetting as set forth in *Sharlow.* Under the first of the two elements, Hecht undertook conduct which aided in the execution of the crime. He set up the initial meeting between the agent and Vollmer, a person who he thought could obtain cocaine for the agent or could contact a potential source of the drug. He was present when phone

[7] *See,* for example, *State v. Wilson,* 95 Wash. 2d 828, 631 P.2d 362 (1981), where aiding and abetting for delivery of marijuana was upheld when the defendant directed the buyer to his brother, vouched for the drug's quality, and witnessed the sale; *Rucker v. State,* 135 Ga. App. 468, 218 S.E.2d 146 (1975), where the conviction was upheld when the defendant introduced the buyer to a supplier at a place suggested by the defendant, vouched for the buyer's reliability, but was absent during the sale; and *Harwood v. State,* 543 P.2d 761 (Okla. Crim. App. 1975), where the defendant simply took the buyer to a friend's home so that the buyer could obtain marijuana.

calls were made which worked out the arrangements for the exchange. Hecht acted further to ensure that Heidecker and Vollmer continued their contact, by making telephone calls between the two parties and relaying information, by physically escorting the agents to Vollmer's house for each of the two meetings, and, finally, by accompanying Vollmer to meet the agents just prior to the final sale.

Under the second of the two elements, namely, that Hecht intended that his actions yield such assistance, we believe that such intent may be inferred from the defendant's conduct itself. *State v. Charbarneau,* 82 Wis. 2d at 655, citing *State v. Cydzik,* 60 Wis. 2d at 697. Although Hecht claims that he was merely a passive observer and that his only participation was to introduce Vollmer to Heidecker, we believe that his conduct proceeded much beyond this point. Once again, we are struck by the glaring fact that Hecht appeared to do all within his power to ensure that Vollmer and the agents continued their contact in order to reach the point of making an exchange, short of being present at the actual transfer. The jury may have inferred from this continued conduct facilitating the contact between the parties that Hecht did indeed intend to lend his assistance in bringing about the actual exchange. This inference is supported by the record and, though it involves circumstantial evidence, circumstantial evidence may be sufficient to support a conviction. In this case, we believe that Hecht's continued pattern of conduct was inconsistent with any reasonable hypothesis of innocence, namely, his claim of passive observation. *State v. Charbarneau,* 82 Wis. 2d at 655-56.[8]

---

[8] Hecht argues that *United States v. Jackson,* 526 F.2d 1236 (5th Cir. 1976), supports his position that his conduct was not sufficient to sustain an aiding and abetting conviction. However, we find that *Jackson* may be distinguished from the instant case

Although he was not physically present at the actual exchange, we have stated in prior case law that to be found guilty of aiding and abetting in the commission of an offense, it is not necessary that all defendants be present at the scene of the crime. *State v. Sharlow,* 110 Wis. 2d at 240. This court has also held that aider and abettor liability extends to the natural and probable consequence of the intended acts, as well as any other crime which, under the circumstances, was a natural and probable consequence of the intended crime. Such issues are questions of fact for the jury to decide. *State v. Balistreri,* 106 Wis. 2d at 757–59; *State v. Asfoor,* 75 Wis. 2d 411, 428, 249 N.W.2d 529 (1977) ; and *State v. Cydzik,* 60 Wis. 2d at 697. In this case, the jury could reasonably find that the defendant put into motion the wheels of a mechanism that would ultimately lead to a sale of cocaine to the agents. By his acts of keeping Vollmer and the agents in close contact, he kept those wheels turning in a fluid motion. Under these circumstances, the jury could also reasonably find that the natural and probable consequence of this chain of events was the sale of cocaine and that the defendant is, therefore, liable for the possession of a controlled substance with the intent to deliver, under the theory of aiding and abetting the commission of the crime.

Under the second theory, namely, *conspiracy* to commit the crime, this court set down the necessary elements in *State v. Nutley,* 24 Wis. 2d at 556. The two elements are:

---

because it concerned the defendant's introduction of two co-defendants, who subsequently arranged to sell cocaine to federal agents. The *Jackson* court held that this introduction was not sufficient to sustain a conviction for aiding and abetting under the *possession* clause of 21 U.S.C.A. sec. 841(a)(1), although it was sufficient to sustain an aiding and abetting charge of distribution under that same statute. Because Hecht's acts proceeded much beyond the point of a mere introduction, we feel that the *Jackson* case is not relevant. *See also, United States v. Raper,* 676 F.2d 841, 851 n. 1 (D.C. Cir. 1982).

"(1) An agreement among two or more persons to direct their conduct toward the realization of a criminal objective.

"(2) Each member of the conspiracy must individually consciously intend the realization of the particular criminal objective. Each must have an individual 'stake in the venture.' " *Id.*

Once again, Hecht argues that his involvement in the crime was not to such a degree as to sustain his conviction as a conspirator. He asserts that he acted merely to recommend Vollmer as a possible source of cocaine to the agents and that he had no stake in the venture.

This court has recognized that the existence of an agreement may be demonstrated by circumstantial evidence. *Id.* at 559. This court has also recognized that the circumstantial evidence utilized to demonstrate an agreement need not indicate an *express* agreement among the parties; rather, a mere tacit understanding of a shared goal is sufficient. *Hawpetoss v. State,* 52 Wis. 2d at 81; and *O'Neil v. State,* 237 Wis. 391, 404–05, 296 N.W. 96 (1941). The fact that all of the parties do not know one another does not absolve them of their status of conspirators.

"'If there is a meeting of minds, brought about in any way, to accomplish the common purpose, the essentials of a guilty combination are all satisfied.'" *O'Neil v. State,* 237 Wis. at 405 (citations omitted).

In this case, we believe that the same facts which support Hecht's liability under the theory of aiding and abetting in the commission of the crime also support a finding of conspiracy. This is often the case, for though there may be distinctions between aiding and abetting and conspiracy, this court has noted that in certain cases, these distinctions are often blurred. *Holland v. State,* 91 Wis. 2d at 142.

"'There will be some overlapping between [the conspiracy provision] and the aiding and abetting provision

because a conspirator or solicitor frequently also aids and abets the actual commission of the crime.' " *Id.* at 142, citing the Wisconsin Legislative Council 1953 Report, vol. 5, Judiciary Committee Report, at 5.

We believe that this is such a case. As to the first element, we believe that the jury could have reasonably inferred that there existed a tacit agreement between the defendant and Vollmer concerning the sale of cocaine to the agents (and an agreement between Vollmer and Kohls in which Kohls would know of Hecht's role in contacting Vollmer). Hecht's actions, as well as the actions of Kohls and Vollmer, clearly support such an inference, *State ex rel. Kanieski v. Gagnon,* 54 Wis. 2d 108, 117, 194 N.W.2d 808 (1972), and the existence of such agreements may be demonstrated by circumstantial evidence, *State v. Nutley,* 24 Wis. 2d at 559. Hecht did not merely direct the agents to Vollmer. Rather, he contacted Vollmer personally, inquired about the possibility of obtaining a large amount of cocaine and the prices for the drug, then escorted the agents to Vollmer's residence and personally introduced Heidecker to Vollmer. His subsequent conduct supports the second element of conspiracy, that he consciously intended the achievement of the exchange of cocaine between the Madison source and Heidecker. Intent may be inferred from conduct, *State v. Charbarneau,* 82 Wis. 2d at 655. Under these circumstances, we believe that there is ample evidence from which the jury could have reasonably inferred intent on Hecht's part. His conduct evinces an intent to facilitate all of the contacts between Vollmer and the agent leading up to the actual sale. Although he was not present at Kohls' arrival, the mere fact that he was present until approximately three minutes before Kohls' arrival and was present during all prior negotiations among Vollmer, the agents, and the Madison source supports this finding that Hecht fully intended that the actual sale be accomplished.

As we stated previously, it is not necessary for all conspirators to know one another. Therefore, it is not necessary that the defendant and Kohls became personally acquainted with one another. Rather, it is sufficient that there was a "meeting of the minds" of Hecht, Vollmer, and Kohls "to accomplish the common purpose" of selling the cocaine to agents Heidecker and Malone. The court of appeals noted, and we believe that the evidence overwhelmingly supports, the inference that both Kohls and Hecht were parties with Vollmer to a tacit agreement toward the realization of the delivery of the drug to the agents. The support for this inference is once again found in Hecht's presence during phone calls made by the unnamed source to Vollmer setting up the transaction and in Hecht's presence immediately prior to Kohls' arrival to make the sale.

The defendant argues strenuously that he had no "stake in the venture." However, while evidence of such a "stake" may be persuasive of the degree of the party's involvement, lack of a "stake in the venture" does not absolve one of party to a crime liability. *Krueger v. State*, 84 Wis. 2d 272, 286, 267 N.W.2d 602 (1978). It is not a third element to either of the theories of aiding and abetting liability or conspiracy. As we have stated above, we find the defendant's participation to such a degree as to support a finding of guilt under either theory, regardless of the presence or absence of such a stake. However, it is clear to this court that Hecht did believe that he had a "stake in the venture." Although agent Heidecker testified that it was not his practice to offer money to parties who connect him with a source, Hecht gave the following testimony:

"A.   Yes, then [Heidecker] kept asking about more drugs, and he said—he offered Donald Grove and myself $1,700 apiece if we could connect him with

a person who could connect him possibly with a source of drugs.

"Q. What was your response?

"A. Well, $1,700 was about half of my income for that year, so I was kind of interested in going along with him."

We believe that Hecht's testimony concerning his belief of a "stake" further supports the jury's finding that he consciously intended the sale, to ensure his collection of the $1,700, and is also indicative of his advanced degree of involvement in the entire venture.

We find the evidence in this case sufficient to sustain a conviction on a party to a crime theory. The defendant's position of innocence conflicts with the facts that the jury may have reasonably believed. *State v. Charbarneau*, 82 Wis. 2d at 657.

In conclusion, then, we hold that the procuring agent theory is not a valid defense in Wisconsin. We also hold that the evidence is sufficient to sustain the conviction for party to the crime of possession of a controlled substance with the intent to deliver, contrary to secs. 161.41 (1m) and 939.05, Stats., where a defendant's course of conduct clearly facilitates an exchange of cocaine between the buyers and the source of the drug.

*By the Court.*—The decision of the court of appeals is affirmed; the judgment of the circuit court is affirmed.