[No. 25244-5-I. Division One. August 5, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. SABINO M.
RAMIREZ, ET AL, *Defendants,* JUAN RINCON
BARRERA, *Appellant.*

*Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Raymon Thomas, Deputy,* for respondent.

AGID, J. — Juan Barrera appeals a judgment for delivering cocaine in violation of RCW 69.50.401(a). He contends the trial court erred in admitting hearsay testimony, and in refusing to give proposed jury instructions. We affirm.

Seattle police officers arrested Barrera during a buy-bust operation at Victor Steinbrueck Park in the Pike Place Market area. The operation required an undercover officer to attempt to buy drugs while additional officers watched from a nearby building. Upon making a purchase, the undercover buying officer was to signal the observing officers, who would then direct other officers in the area to make arrests.

On the night of Barrera's arrest, the undercover buying officer was Officer Martindale and the observing officer was Officer Kilburg. Kilburg saw Martindale make contact with a man in a peach-colored shirt. That man then "appeared to lead" Martindale to a group of Hispanic males located on a nearby knoll. Kilburg watched Martindale converse with one of the men, later identified as Barrera, walk a few feet away and take money from his pocket, and then return to Barrera. One of Barrera's companions handed something to another of Barrera's com-

panions, who then took Martindale's money and handed Martindale the item. Martindale signaled that he had made a successful buy and left the area. Kilburg notified the arrest team, whose members apprehended Barrera and his companions. A search incident to arrest revealed that Barrera had neither drugs nor any of the marked money that Martindale used to buy cocaine in his possession.

Barrera and his companions were charged with delivering cocaine. He and one of those companions, Andre Lopez, were tried together before a jury. At trial, Kilburg testified about his observations. Martindale also testified. He did not mention the man in the peach-colored shirt. Martindale did say that he entered the park, saw three Hispanic males sitting on the bluff, and approached them. He asked Barrera whether he had "any blanca" (cocaine). Barrera said he only had a gram, "Like a grama", and asked Martindale "How much?" Martindale said $40. Martindale then walked a few feet away and counted out $40. When he returned to the group, he told Barrera that he wanted to see the blanca before he turned over any money. Barrera then said something in Spanish to Lopez, who in turn spoke in Spanish to another member of the group, Sabino Ramirez. Ramirez took out a bindle of white powder and handed it to Lopez. Lopez handed the bindle to Martindale, and took Martindale's $40. Martindale signaled the observing officers and walked away.

Neither Barrera nor Lopez testified or presented any evidence at trial. The jury found both men guilty as charged. This appeal by Barrera followed.

## ADMISSION OF EVIDENCE

Before trial, Barrera moved in limine to exclude Kilburg's testimony about the man in the peach-colored shirt. He argued that the testimony was inadmissible declarative hearsay evidence that the group to which the

man led Martindale was involved in the sale of drugs. The court denied Barrera's motion, allowing the testimony for the limited purpose of showing how Martindale came into contact with Barrera's group.

After Kilburg testified, Barrera asked the trial court for a limiting instruction, saying

> I would like the jury instructed that the testimony regarding this individual in the peach-colored T-shirt is being admitted only for the purpose of explaining why Officer Martindale went from one location to another and that it's not been admitted for any other purpose.

An unreported sidebar conference ensued, after which the court did not give a limiting instruction. The court did, however, give Barrera the option of submitting a written limiting instruction to be given with the court's other instructions. Barrera decided against submitting such an instruction, apparently because he believed that instructing the jury after the fact would cause it to reflect further on the evidence rather than disregard it.

On appeal, Barrera assigns error to the trial court's denial of his motion in limine and to its refusal to give a limiting instruction contemporaneously with Kilburg's testimony. Because resolution of the latter challenge affects disposition of the former, we consider it first.

 Although it is usually preferable to give a limiting instruction contemporaneously with the evidence at issue,[1] it is within a trial court's discretion to choose instead to give a limiting instruction at the close of all of the evidence. *E.g.*, *United States v. Longbehn*, 898 F.2d 635, 639-40 (8th Cir.), *cert. denied*, 110 S. Ct. 2217, 111 S. Ct. 208 (1990); *United States v. Dabish*, 708 F.2d 240, 243 (6th Cir. 1983); *United States v. Weil*, 561 F.2d 1109, 1111 (4th Cir. 1977); *United States v. Campanale*, 518 F.2d 352,

---

[1] *Moore v. Mayfair Tavern, Inc.*, 75 Wn.2d 401, 409, 451 P.2d 669 (1969) (jury can more readily understand and apply limiting instruction if it is given when evidence is introduced); 5 K. Tegland, Wash. Prac., *Evidence* § 24, at 88 (3d ed. 1989) (giving a contemporaneous limiting instruction "is the preferred practice").

362 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976); *United States v. Annoreno*, 460 F.2d 1303, 1307-08 (7th Cir.), *cert. denied*, 409 U.S. 852 (1972); *State v. Perez*, 64 Hawaii 232, 638 P.2d 335, 337 (1981); *State v. Hall*, 246 Kan. 728, 793 P.2d 737, 748-49 (1990). Often, for example, deferral of a limiting instruction is necessary in order to allow time for the judge and counsel to draft an appropriately worded instruction. Here, the record is silent as to the reasons for the trial judge's decision against giving a contemporaneous limiting instruction. We therefore cannot review his decision for an abuse of discretion and consequently must reject Barrera's challenge to this ruling. *Allemeier v. UW*, 42 Wn. App. 465, 473, 712 P.2d 306 (1985), *review denied*, 105 Wn.2d 1014 (1986); *Sime Constr. Co. v. WPPSS*, 28 Wn. App. 10, 18, 621 P.2d 1299 (1980), *review denied*, 95 Wn.2d 1012 (1981).

Because the trial court properly deferred giving a limiting instruction, we do not reach the merits of Barrera's challenge to the propriety of the court's ruling admitting testimony about the man in the peach-colored shirt. By refusing the court's invitation to prepare a written limiting instruction to be given with the court's other instructions, Barrera made a tactical decision which amounted to withdrawing his earlier request for a limiting instruction.[2] We therefore treat this case as one in which no limiting instruction was requested.

■ When error may be obviated by an instruction to the jury, the error is waived unless an instruction is requested. *State v. Barber*, 38 Wn. App. 758, 771, 689 P.2d 1099 (1984), *review denied*, 103 Wn.2d 1013 (1985); *State v. Crawford*, 21 Wn. App. 146, 151, 584 P.2d 442 (1978), *review denied*, 91 Wn.2d 1013 (1979); *see also* 5 K.

---

[2]The lack of an adequate record concerning disposition of Barrera's request for an oral limiting instruction also requires this result. The request, which the State originally agreed to, but Barrera's codefendant opposed, was resolved at a sidebar conference which was never fully reiterated for the record. We are therefore unable to tell whether the request was not pursued because Barrera's counsel thought better of it or for other reasons.

Tegland, Wash. Prac., *Evidence* § 24 (3d ed. 1989) (failure to request limiting instruction waives any objection to admission of evidence if instruction would have eliminated any unfair prejudice). Assuming arguendo that evidence about the man in the peach-colored shirt was improperly admitted, here a properly worded limiting instruction would have eliminated any unfair prejudice to Barrera that resulted from admission of that evidence. *See generally State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982) (jury is presumed to follow the court's instructions), *cert. denied,* 459 U.S. 1211 (1983). Accordingly, since Barrera refused to request a limiting instruction, and a limiting instruction could have cured the error complained of, we hold that Barrera has waived review of the trial court's ruling allowing the disputed evidence.

## REFUSAL OF INSTRUCTIONS

Barrera's remaining assignments of error concern the trial court's refusal of several of his proposed instructions. We uphold the trial court's decision.

Barrera's principal defense was that his participation in the drug transaction was limited to assisting Martindale by acting as his translator. He contended in the trial court and on appeal that having played such a limited role, he cannot be convicted for participating in a delivery in violation of RCW 69.50.401(a). Barrera asked the court to instruct the jury that he could not be convicted of delivery if he assisted only the purchaser, Martindale. He also requested lesser included offense instructions on attempted possession of a controlled substance. The trial court rejected all of these proposed instructions because it disagreed with Barrera's legal theory that he could not be convicted of delivery if he assisted only Martindale.[3]

---

[3]The trial court also rejected the proposed instructions on the ground that they were not supported by the evidence. If it were necessary to reach this issue, we would agree with the trial court. The evidence unquestionably shows Barrera's participation in this transaction was as a salesperson, not a mere translator.

Before enactment of the Uniform Controlled Substances Act in 1971,[4] one who acted solely as a drug buyer's agent was exempt from prosecution for being an accomplice to the *sale* of dangerous drugs. *State v. Walker*, 82 Wn.2d 851, 857, 514 P.2d 919 (1973); *State v. Catterall*, 5 Wn. App. 373, 376, 486 P.2d 1167, *review denied*, 80 Wn.2d 1001 (1971). The reason for the exemption was that the relevant statute, RCW 69.40.060 (now repealed), expressly prohibited only the *sale* of dangerous drugs. *Catterall*, 5 Wn. App. at 376.

Barrera contends that this buyer's agent exemption continues under the Uniform Controlled Substances Act, RCW 69.50 (the Uniform Act). He argues that cases to the contrary, namely *State v. Sherman*, 15 Wn. App. 168, 547 P.2d 1234 (1976) and *State v. Matson*, 22 Wn. App. 114, 587 P.2d 540 (1978), are wrongly decided. In those cases, the court focused on differences in the wording of the former law, RCW 69.40, which prohibited only the *sale* of unlawful drugs, and the Uniform Act, RCW 69.50.401(a), which prohibits *delivery* of such substances. A "sale" is defined as "the passing of title and possession of a controlled substance from the seller to the buyer for a price whether or not the price is paid immediately or at a future date." RCW 69.50.410(1)(a). In contrast, a "delivery" which is the prohibited transaction under the Uniform Act, is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." RCW 69.50.101(f). Reasoning that, unlike the former act, the Uniform Act's delivery language does not distinguish between participating in a drug transaction as either a buyer or seller, the *Sherman* and *Matson* courts held that no automatic buyer or buyer-agent exemption exists under the Uniform Act. *Matson*, 22 Wn. App. at 118; *Sherman*, 15 Wn. App. at 170-71.

█ Barrera's attack on *Matson* and *Sherman* is not persuasive. As Barrera himself points out, Washington

[4]Laws of 1971, 1st Ex. Sess., ch. 308.

courts should construe the Uniform Act in conjunction with decisions from other states that have enacted it. RCW 69.50.603. Significantly, virtually every court that has considered the issue has arrived at the same holding as did the *Matson* and *Sherman* courts. *See, e.g., Kinsey v. State*, 545 So. 2d 200, 201-02 (Ala. Crim. App. 1989); *Webber v. State*, 15 Ark. App. 261, 692 S.W.2d 255, 257 (1985); *State v. Sharp*, 104 Idaho 691, 662 P.2d 1135, 1138-39 (1983); *People v. Collins*, 63 Mich. App. 376, 234 N.W.2d 531, 535 (1975); *Banks v. State*, 654 P.2d 631, 632 (Okla. Crim. App. 1982); *State v. Casias*, 567 P.2d 1097, 1099-1100 (Utah 1977); *State v. Hecht*, 116 Wis. 2d 605, 342 N.W.2d 721, 725-28 (1984).[5]

█ Of these cases, *Hecht* is notable for its analysis. The *Hecht* court explained that, under prior law, a participant in a particular drug transaction was liable only as a seller or as a buyer. There was no general offense of participation in the transaction as a whole. *Hecht*, 342 N.W.2d at 725. By its use of the term "deliver", the Uniform Act changed this so as to criminalize *participation* in the transfer of unlawful drugs, regardless of whether the participation benefited the buyer or the seller. *Hecht*, 342 N.W.2d at 726-28. Consequently, a procuring agent defense cannot be raised against charges of "delivery" made under the Uniform Act.

We are further persuaded that *Sherman* and *Matson* are correct because their holdings are in accord with the common understanding of "transfer", the word chosen by the Legislature to define a delivery. RCW 69.50.101(f).[6] Transfer, which is not defined in the Uniform Act, means "to cause to pass from one person or thing to another", as well as "to carry or take from one person or place to

---

[5]The *Hecht* court also pointed out that courts have uniformly held that there is no procuring agent defense under the federal drug control act, an act which is very similar to the Uniform Act. 342 N.W.2d at 726-27.

[6]Another panel of this court has reached the same conclusion. *State v. Grace*, 61 Wn. App. 787, 812 P.2d 865 (1991).

another".[7] *Webster's Third New International Dictionary* 2426-27 (1971), *quoted in State v. Campbell*, 59 Wn. App. 61, 64, 795 P.2d 750 (1990). Thus, when the Legislature defined a delivery as a "transfer", it necessarily included as "deliverers" any persons who intentionally participated in bringing about the drug transaction.

We recognize that Barrera's contention enjoys some legal support. In *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977), the court rejected "the State's contention that a transferee [recipient] or one who aids only the transferee is guilty of delivery." The *Lott* court, however, relied on a 1955 federal case decided before enactment of the current federal act under which a "procuring agent" defense has been rejected. *E.g.*, *United States v. Collins*, 552 F.2d 243, 245-46 (8th Cir.) (citing cases from other circuits which also reject procuring agent defense), *cert. denied*, 434 U.S. 870 (1977). Its reasoning, therefore, is not persuasive.

Nor do the cases cited by Barrera holding that the recipient or purchaser of drugs cannot be prosecuted for delivery have any bearing on the validity of *Matson* and *Sherman*. *See*, *e.g.*, *State v. Frederickson*, 92 Or. App. 223, 757 P.2d 1366, 1368 (1988); *Sobrino v. State*, 471 So. 2d 1333, 1335 (Fla. Dist. Ct. App. 1985); *Wheeler v. State*, 691 P.2d 599, 601-02 (Wyo. 1984). Those cases do not consider the criminal liability of the recipient's agent; indeed, one implies that such a person could be charged with delivery.[8]

■ In sum, the trial court properly refused Barrera's proposed instructions as they are premised on an incorrect statement of the law. *E.g.*, *State v. Simmons*,

---

[7] Undefined statutory terms should be given their ordinary meaning, which may be determined by reference to a dictionary. *E.g.*, *Brenner v. Leake*, 46 Wn. App. 852, 854-55, 732 P.2d 1031 (1987).

[8] The *Frederickson* court reasoned that a recipient cannot be convicted of delivery because a delivery is the process of handing over a drug. 757 P.2d at 1368. Under this reasoning, one who participates in the handing over process, whether on behalf of the giver or the receiver, has committed an unlawful delivery. This result is in accord with *Matson* and *Sherman*.

35 Wn. App. 421, 424, 667 P.2d 133 (trial court may refuse erroneous instruction), *review denied*, 100 Wn.2d 1025 (1983). Accordingly, we reject Barrera's instruction-related assignments of error.

The judgment is affirmed.

SCHOLFIELD and COLEMAN, JJ., concur.

Reconsideration denied August 29, 1991.

Review denied at 118 Wn.2d 1010 (1992).