[No. 17528-2-II.    Division Two.    May 23, 1995.]

THE STATE OF WASHINGTON, *Respondent,* v. JOELLEN EILEEN MORRIS, *Appellant.*

---

*Alfred Arthur Bennett,* for appellant (appointed counsel for appeal).

*James J. Stonier, Prosecuting Attorney,* and *Susan Irene Baur, Deputy,* for respondent.

WIGGINS, J. — Appellant Joellen Eileen Morris purchased three-sixteenths of an ounce of cocaine from an undercover police informer. She was convicted of delivering a controlled substance.[1] The sole issue in this case is whether a purchaser "delivers" a controlled substance, within the meaning of the statutory definition of "deliver" in the Washington Uniform Controlled Substances Act (Uniform Act): the "transfer from one person to another of a [controlled] substance."[2] We hold

[1]RCW 69.50.401(a).

[2]RCW 69.50.101(f).

that the indicia of legislative intent — the statutory definition of "deliver", the common meaning of "transfer", the consistent statutory distinction between delivery and mere possession, and uniformity of interpretation of the Uniform Act— all lead to the conclusion that a purchaser of controlled substances does not deliver. We reverse.

James Moloney, a confidential informer for the Cowlitz-Wahkiakum County Narcotics Task Force, posed as a drug dealer. Morris stipulated that she met with Moloney and purchased one-eighth ounce of cocaine from Moloney. Moloney then offered to sell an additional one-sixteenth of an ounce of cocaine to Morris, and she purchased the additional cocaine. Task force agents immediately arrested Morris. She was charged with two counts of delivery of controlled substances. Morris stipulated to the facts and that she was guilty of possession, but denied her guilt of delivery. The trial court found that the two sales should be considered as one and that Morris was guilty of delivery "by taking part in a delivery of a controlled substance".

Under Washington's Uniform Act, "it is unlawful for any person to manufacture, deliver, or possess with intent to . . . deliver, a controlled substance."[3] The Uniform Act further provides:

> "Deliver" or "delivery," means the actual or constructive transfer from one person to another of a [controlled] substance, whether or not there is an agency relationship.[4]

In interpreting the Uniform Act, we strive to ascertain and carry out the legislative intent.[5] The statutory definition of a term controls its interpretation.[6] This statute defines "delivery" as a "transfer", but does not define a "transfer". In the absence of a legislative definition, we look to a common understanding of the term as found in dictionaries.[7]

---

[3]RCW 69.50.401(a).

[4]RCW 69.50.101(f).

[5]*Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991).

[6]*Seattle v. Shepherd*, 93 Wn.2d 861, 866, 613 P.2d 1158 (1980).

[7]*American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991).

The Court of Appeals has interpreted the term "transfer" in Washington's Uniform Act in light of the definition in *Webster's Third New International Dictionary* 2426-27 (1971): "to cause to pass from one person or thing to another", or "to carry or take from one person or place to another".[8] In the civil context of a conveyance of tidelands, the Supreme Court relied on the following dictionary definitions to define "transfer" as used in a different statutory scheme:

> 1 a: The conveyance of right, title, or interest in either real or personal property from one person to another by sale, gift, or other process[.]
>
> *Webster's Third New International Dictionary* (1968).
>
> 15. A conveyance, by sale, gift, or otherwise, of real or personal property, to another.
>
> *Random House Dictionary of the English Language* (1967).
>
> To convey or remove from one place, person, etc., to another; pass or hand over from one to another; specif., to make over the possession or control of (as, to transfer a title to land); sell or give.
>
> Black's Law Dictionary (4th ed. rev. 1968)[.][9]

■ ■ Under these definitions, a person who buys drugs does not "transfer", and hence does not "deliver". The dictionaries define the verb "transfer" with active verbs describing the actions of a transferor, not the actions of a transferee— cause to pass, carry or take, convey or remove, pass or hand over, sell or give. These definitions all contemplate that a person who transfers undertakes the active task of relinquishing control to another. The person who takes control does not "transfer" or "deliver", but accepts the transfer or delivery.

Interpretation of the Uniform Act cannot stop with the one word "transfer", but should consider other provisions of the Uniform Act as well. The Uniform Act consistently distinguishes between a person who sells or delivers drugs and one who simply possesses drugs. The maximum imprisonment for delivery — 10 years — is twice the maximum term

---

[8]*State v. Ramirez*, 62 Wn. App. 301, 308-09, 814 P.2d 227 (1991), *review denied*, 118 Wn.2d 1010 (1992).

[9]*Marino Property Co. v. Port of Seattle*, 88 Wn.2d 822, 833, 567 P.2d 1125 (1977).

for possession.[10] The Sentencing Reform Act of 1981 (SRA) distinguishes even more dramatically between a seller and a possessor. A person with no prior offenses (such as Morris) who delivers cocaine is subject to a mid-range sentence of 2 years, while a possessor with no prior offenses faces a mid-range sentence of only 0-90 days.[11] Additionally, the SRA mandates that persons who deliver within 1,000 feet of a school or bus stop are subject to an additional 24 months, but possession near a school carries no such enhancement.[12]

The more severe penalties for delivery demonstrate that the Legislature has distinguished between a drug seller and a drug possessor/user. We would erase, or at least blur, this legislative distinction if we treated the drug buyer identically with the drug seller. Most persons who possess drugs have purchased the drugs. It makes no sense to punish them far more severely if they are apprehended at the moment of purchase rather than at the later time of possession.

The Legislature has directed us to look to the law of other jurisdictions in interpreting Washington's Uniform Act.[13] Washington's definition of "deliver" was taken verbatim from the Uniform Controlled Substances Act, which was in turn taken verbatim from the Federal Drug Control Act.[14] The commissioners drafted the Uniform Act to complement the federal act, and called for uniformity among the state and federal acts.[15] The federal act, like the Uniform Act, distinguishes between delivery and possession, incorporating a philosophy recommended by the President's Advisory

[10]*Compare* RCW 69.50.401(a)(1)(i) *with* .401(d).

[11]RCW 9.94A.310.

[12]RCW 9.94A.310(5).

[13]"This chapter shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among those states which enact it." RCW 69.50.603.

[14]*Compare* RCW 69.50.101(f) *with* Uniform Controlled Substances Act § 101(f), 9 (pt. 2) *U.L.A.* 1, 11 (1988) *and* 21 U.S.C. § 802(8) (later amended to include not only transfer of "a controlled substance" but also of "a listed chemical").

[15]U.C.S.A. prefatory note, 9 *U.L.A.* at 2.

Commission on Narcotic and Drug Abuse, known as the Prettyman Commission:

> The general philosophy of this Commission can be stated in three parts:
>
> (1) The illegal traffic in drugs should be attacked with the full power of the Federal Government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive.
>
> (2) The individual abuser should be rehabilitated . . ..
>
> (3) Drug users who violate the law by small purchases or sales should be made to recognize what society demands of them. In these instances, penalties should be applied according to the principles of our present code of justice. When the penalties involve imprisonment, however, the rehabilitation of the individual, rather than retributive punishment, should be the major objective.[16]

Although Congress did not completely adopt the distinction between "the illegal traffic in drugs" and "small purchases and sales" by drug users, the disparate punishments for delivery and possession reflect the underlying premise that a person who delivers drugs is guilty of more reprehensible conduct than a person who merely purchases a small quantity of drugs. Washington's adoption of the identical definition of "deliver" implicates this basic philosophy, reinforcing our interpretation that a drug purchaser is not guilty of delivery.

Our interpretation is consistent with the only other case we have found interpreting the definition of "deliver" under the Uniform Act. The Oregon Court of Appeals held in *State v. Frederickson*[17] that a person who purchased cocaine from an undercover police officer was not guilty of delivery. The Oregon court rejected the State's "strained" argument that the Uniform Act's definition of "deliver" as transfer "from one person to another" demonstrates legislative intent to include both the transferor and the recipient.[18] The court

---

[16]Comprehensive Drug Abuse Prevention and Control Act of 1970, H.R. No. 91-1444, 91st Cong., 2d Sess. 1437 (1970), *reprinted in* 1970 *U.S. Code Cong. & Ad. News* 4566, 4575.

[17]92 Or. App. 223, 757 P.2d 1366 (1988).

[18]*Frederickson*, 92 Or. App. at 226.

stated that such a "reading ignores the transitive, one-way nature of the verb 'transfer' and the straightforward sense of the statute".[19] We agree with the Oregon court and interpret Washington's Uniform Act identically, thereby furthering the legislative directive to interpret the Washington Act uniformly with the other states.[20]

The drafters intended the Uniform Act to be interpreted consistently with the Federal Drug Control Act.[21] Our holding achieves that goal. In *United States v. Baker*,[22] the Ninth Circuit ruled that a recipient of a drug delivery cannot be convicted of *distribution*. Distribute, under the federal act means "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11). In turn, "deliver" is defined as the actual, constructive or attempted transfer of a controlled substance. 21 U.S.C. § 802(8). Thus, the Ninth Circuit has, in effect, established that a buyer of a controlled substance does not transfer or deliver that substance.

█ The State argues that Morris is an accomplice to the seller of the drugs, as having aided in a delivery. We reject this argument just as the Court of Appeals rejected it in *State v. Catterall*, which interpreted the predecessor statute to the Uniform Act.[23] Judge Horowitz acknowledged in *Catterall* that a purchase and sale are different sides of the same transaction, that a purchaser must cooperate with the seller in order to effect a sale, and that "[a]s a matter of abstract logic, that cooperation requires that the purchaser

---

[19]*Frederickson*, 92 Or. App. at 226.

[20]RCW 69.50.603.

[21]"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government." U.C.S.A. prefatory note, 9 U.L.A. at 2.

[22]10 F.3d 1374, 1418 (9th Cir. 1993), *cert. denied*, 115 S. Ct. 330 (1994).

[23]*State v. Catterall*, 5 Wn. App. 373, 486 P.2d 1167 (interpreting the now-repealed Dangerous Drug Act, RCW 69.40), *review denied*, 80 Wn.2d 1001 (1971); *accord State v. Warnock*, 7 Wn. App. 621, 622-23, 501 P.2d 625 (1972), *review denied*, 81 Wn.2d 1009 (1973).

aid or abet the seller in making the sale."[24] Nonetheless, Judge Horowitz concluded that since the Legislature had not chosen to criminalize the purchase itself, it would frustrate the legislative intent to hold that the purchaser becomes liable through the general aiding and abetting statute.[25] The same logic applies with full force to the Uniform Act. The Legislature defined the crime as "delivery" or "transfer" and it would frustrate that definition to impose liability on the transferee through the accomplice statute. The courts of Florida, Iowa, Montana, Texas and Wyoming have similarly decided under the Uniform Act that the purchaser of drugs is not an accomplice of the seller.[26] Our interpretation is consistent with these other states, and therefore furthers the legislative intent that the Uniform Act be interpreted uniformly.[27]

The State cites several Court of Appeals cases holding that the "procuring agent" defense under Washington's prior Dangerous Drug Act is no longer available under the Uniform Act.[28] The "procuring agent" cases do not directly address the liability of the ultimate purchaser, but instead consider whether an intermediary between the seller and purchaser can be guilty of "delivery". In each case, the defendant facilitated the delivery by locating a seller after being asked for drugs by an undercover office or informant.[29] The procuring

---

[24]*Catterall*, at 377.

[25]*Catterall*, at 377.

[26]*Sobrino v. State*, 471 So. 2d 1333, 1335 (Fla. Ct. App. 1985); *State v. McDaniel*, 512 N.W.2d 305, 307-08 (Iowa 1994); *State v. Stokoe*, 224 Mont. 461, 465, 730 P.2d 415, 417-18 (1986); *State v. Utterback*, 240 Neb. 981, 990-91, 485 N.W.2d 760, 769-70 (1992); *Robinson v. State*, 815 S.W.2d 361, 363-64 (Tex. Ct. App. 1991); *Wheeler v. State*, 691 P.2d 599, 601-02 (Wyo. 1984).

[27]RCW 69.50.603.

[28]*State v. Ramirez*, 62 Wn. App. 301, 308-09, 814 P.2d 227 (1991), *review denied*, 118 Wn.2d 1010 (1992); *State v. Grace*, 61 Wn. App. 787, 812 P.2d 865, *review denied*, 117 Wn.2d 1019 (1991); *State v. Matson*, 22 Wn. App. 114, 587 P.2d 540 (1978).

[29]*Ramirez*, 62 Wn. App. at 303; *Grace*, 61 Wn. App. at 788-89; *Matson*, 22 Wn. App. at 116.

agent was not the purchaser, and the agent participated in some significant way in the delivery of the drugs. The Court of Appeals recognized in the most recent of these cases that the liability of the procuring agent differs from the liability of the ultimate purchaser, distinguishing the decision of the Oregon Court of Appeals in *Frederickson.*[30] We agree and need not consider the liability of the procuring agent.

Morris's judgment and sentence are reversed.

SEINFELD, C.J., and MORGAN, J., concur.

---

[30]*Ramirez*, at 309.