FILED
COURT OF APPEALS
DIVISION II

2013 DEC 10 AM 9: 53

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42865-2-II |
| Respondent, | |
| v. | |
| DERIK MAPLES, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Derik Maples appeals his convictions for second degree felony murder and first degree assault arising from a controlled substance delivery where his accomplice fired shots into the buyers' car. He argues that (1) the trial court erred by instructing the jury that a buyer is not an accomplice to the crime of delivery of a controlled substance, (2) there is insufficient evidence to support his murder conviction, and (3) there is insufficient evidence to support his assault conviction. He also includes a statement of additional grounds (SAG), arguing that his Sixth Amendment rights were violated because the assault victim did not testify at trial. Washington courts have determined that a buyer is not an accomplice to delivery of a controlled substance and the trial court's instructions appropriately reflected that. Further, there is sufficient evidence that the shooting occurred during the course of the delivery, the shooter intended to assault the victim, and Maples was an accomplice to the assault. Finally, Maples's Sixth Amendment rights were not violated because the State did not attempt to introduce any of the witness's statements and the witness's failure to appear was not the result of State action. We affirm.

FACTS

On December 1, 2009, Aaron Scott called Maples and asked if he would sell cocaine to some of Scott's friends, Clement Adams and Tyshaun Foreman. Maples agreed and obtained $300 of cocaine from Alex Velasquez. While at Velasquez's, Maples mentioned that Scott and his friends were acting "funny" and had called Maples from a restricted number. 5 Report of Proceedings (RP) at 780. Maples asked his friend, Justin Tyler, to come with him to the sale. Tyler agreed and asked Velasquez for a gun. Maples said that he thought the gun was for "protection" and "to make sure that nothing went wrong." 6A RP at 840.

Maples agreed to meet Scott's friends at the S&S Mart in Vancouver. When Maples and Tyler arrived, Maples got into the back seat of a waiting car with Adams and Foreman. He gave the passenger, Foreman, a baggie of cocaine and Foreman attempted to give him counterfeit cash in exchange. Maples protested and attempted to retrieve the cocaine. Adams acted like he was going to hit Maples, so Maples jumped out of the car and said, "They robbed me." 6A RP at 844. Tyler then fired five shots at the car, one of which hit Adams in the head, killing him. Maples and Tyler fled.

The State charged Maples with (1) first degree murder or, in the alternative, second degree felony murder and (2) first degree attempted murder or, in the alternative, first degree assault. Before trial, the State made a motion in limine to prohibit Maples from arguing that Adams was a participant in the underlying felony, delivery of a controlled substance. It argued that a drug buyer is not an accomplice under Washington case law. The trial court did not make a clear ruling at that point, instead telling Maples, "I'm not trying to eliminate your ability to put

your theory before the . . . jury. . . . But, I think you need to be in conformity with what the State is saying about the use of the term 'participant.'" 2 RP at 231. The trial court admitted that this "doesn't give you a whole lot of direction." 2 RP at 231-32. The State then suggested that the issue could be clarified when the parties discussed jury instructions, and the trial court agreed.

The trial court later instructed the jury that "[a] 'participant' in a crime is a person who is involved in committing that crime, either as a principal or as an accomplice" and that "[a] purchaser of controlled substances is not an accomplice in the crime of delivery of a controlled substance." CP at 224-25. Maples did not object to either instruction at trial.

The jury found Maples guilty of second degree murder and first degree assault and it returned a special verdict finding that he or an accomplice was armed with a firearm at the time of both crimes. The trial court sentenced him to a total of 456 months of confinement. Maples appeals.

ANALYSIS

I.    PARTICIPANT

Maples first argues that the trial court violated his due process rights when it refused to allow him to argue that Adams was a participant in the felony underlying the murder charge. The distinction is critical because, as this case was charged, the State was required to prove that the victim was not also a participant in the underlying crime, delivery of a controlled substance. Because Washington case law holds that a controlled substances buyer is not an accomplice to the crime of delivery of a controlled substance, we affirm the trial court.

3

First, the trial court did not actually rule on the State's motion in limine, and Maples does not make a substantive argument in his brief about the trial court's ruling, instead focusing on jury instruction 20—"A purchaser of controlled substances is not an accomplice in the crime of delivery of a controlled substance." Appellant's Br. at 15. But Maples did not object to the challenged jury instruction at trial.

Generally, a defendant cannot raise an error for the first time on appeal. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). The purpose behind this rule is to encourage the "'efficient use of judicial resources'" by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). But, a defendant may raise particular types of errors for the first time on appeal, including "manifest error[s] affecting a constitutional right." RAP 2.5(a)(3). Here, Maples fails to argue that any of the exceptions listed in RAP 2.5(a) apply. Accordingly, he has not preserved this argument for appeal. Even assuming Maples preserved this alleged error, his argument still fails because the trial court did not err by giving instruction 20.

A person is guilty of second degree murder when he commits or attempts to commit any felony and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants. RCW 9A.32.050(1)(b). Here, the underlying felony was delivery of a controlled substance. Generally, a "participant" is "another person involved in the crime—i.e., another principal or accomplice." *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984). But Washington case law has determined that a controlled substances buyer—such as Adams—is not an accomplice to delivery. *State v. Morris*, 77 Wn. App. 948, 954-55, 896 P.2d 81 (1995) (interpreting the

4

delivery of a controlled substance statute and holding that that a buyer cannot be charged with delivery of a controlled substance, even as an accomplice); *State v. Warnock*, 7 Wn. App. 621, 623, 501 P.2d 625 (1972) (reasoning that, since a buyer cannot be charged with delivery, he cannot, therefore, be an accomplice to delivery); *State v. Catterall*, 5 Wn. App. 373, 376, 486 P.2d 1167 (1971) (noting that the legislature intended to treat buyers and sellers differently and holding that a buyer is not an accomplice to delivery of a controlled substance).[1] Relying on this case law, the trial court instructed the jury that a controlled substances buyer is not an accomplice to the crime of delivery of a controlled substance.

Using the courts' logic in *Catterall* and *Warnock*, it follows that Adams was not a "participant," i.e., a principal or accomplice, in the delivery of a controlled substance. We noted in *Warnock* that "'[t]he test in this state as to whether a witness is an accomplice or not is whether he could be indicted for the same crime for which the defendant is being tried.'" 7 Wn. App. at 623 (quoting *State v. Emmanuel*, 42 Wn.2d 799, 821, 259 P.2d 845 (1953)). In *Catterall* we stated, "The abettor, within the meaning of the statute, must stand in the same relation to the crime as the criminal—approach it from the same direction, touch it at the same point." 5 Wn. App. at 378 (quoting *State v. Teahan*, 50 Conn. 92, 101 (1882)). Adams could not have been indicted for delivery of a controlled substance. *See Morris*, 77 Wn. App. at 951 ("The person

---

[1] *Catterall* involved offenses under the repealed Dangerous Drug Act, but this court held in *Warnock* that the result would be the same under both the Dangerous Drug Act and the Uniform Controlled Substances Act because both punish possession separately from delivery. 7 Wn. App. at 622-23. Divisions 1 and 3 have held that the "purchaser-agent distinction" did not survive the repeal of the Dangerous Drug Act. *See State v. Ramirez*, 62 Wn. App. 301, 308-09, 814 P.2d 227 (1991); *State v. Sherman*, 15 Wn. App. 168, 170, 547 P.2d 1234 (1976). But those cases involved "procuring agents" rather than ultimate buyers. *Ramirez*, 62 Wn. App. at 308-09; *Sherman*, 15 Wn. App. at 170. Here, Adams did not deliver or transfer the cocaine, he only received the cocaine. Accordingly, these facts are most similar to *Morris* where we held that a buyer is not an accomplice to delivery. 77 Wn. App. at 954.

who takes control does not 'transfer' or 'deliver[,]' but accepts the transfer or delivery."). As a buyer, he did not "stand in the same relation to the crime" as the seller Maples or "approach it from the same direction." *Catterall*, 5 Wn. App. at 378 (quoting *Teahan*, 50 Conn. at 101). Although Adams's and Maples's intents were compatible—each needed the other to accomplish their respective goal—their intents were not the same.

Maples contends that the felony murder rule was designed to protect innocent persons and Adams was not innocent in this case. But Washington has applied the felony murder statute to situations where the victim was not an innocent party. For example, felony murder victims who were involved in fights that ultimately led to their deaths are not considered "participants" in the underlying assault. *See State v. Brigham*, 52 Wn. App. 208, 210, 758 P.2d 559 (1988); *State v. Langford*, 67 Wn. App. 572, 579-80, 837 P.2d 1037 (1992). Similarly, here, Adams was involved in the drug deal, but he was not an accomplice to the underlying felony, delivery of a controlled substance. Therefore, the trial court did not err when it instructed the jury that a controlled substance buyer is not an accomplice to delivery.

## II.    INSUFFICIENT EVIDENCE FOR SECOND DEGREE MURDER

Maples next argues that there is insufficient evidence to support his second degree murder conviction because the State did not prove that Adams was not a participant or that the shooting occurred during or in immediate flight from the cocaine delivery. Both arguments fail.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d

1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

First, Maples argues that there is insufficient evidence that Adams was not a participant in the crime of delivery of a controlled substance. As discussed above, a buyer is not an accomplice to delivery of a controlled substance. Maples argues several facts that show Adams's involvement in the drug deal; however, none of the facts establish that Adams was acting as the seller or deliverer rather than the buyer. Therefore, there is sufficient evidence that Adams was not a participant.

Second, Maples argues that there is insufficient evidence that the shooting occurred in the course of or in flight from the crime. Because there was close proximity in distance and time between the crime and the shooting and the shooting was a result of the crime, there is sufficient evidence that it occurred during the course of the crime.

To establish that a murder occurred in the course of or in immediate flight from a felony, there must be an "intimate connection" between the killing and the felony. *State v. Brown*, 132 Wn.2d 529, 607-08, 940 P.2d 546 (1997) (quoting *State v. Golladay*, 78 Wn.2d 121, 132, 470 P.2d 191 (1970)). The murder must be in "close proximity in terms of time and distance." *State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990). A causal connection must be clearly established between the felony and the murder such that there is "more than a mere coincidence of time and place." *Brown*, 132 Wn.2d at 608 (quoting 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.5, at 225 (1986)). When an intervening cause is

7

involved, courts consider whether the intervening cause was foreseeable in determining whether a causal connection exists.[2] *See Leech*, 114 Wn.2d at 704-05.

Here, there is close proximity in time and distance between the delivery and the shooting—Tyler fired shots into the car immediately after Maples handed the drugs to Foreman and while the car was still in the parking lot where the delivery occurred. There is also a causal connection between the shooting and the delivery. The shooting resulted from the delivery—Tyler shot into the car because the buyers robbed Maples during the delivery. Arguably, the robbery was an intervening cause of the shooting, but, because it was foreseeable, it does not break the causal connection. Maples's statements to police indicate that he thought a robbery might occur at the delivery. Before he left for the delivery, Maples told Tyler and Velasquez that the buyers were "acting funny," and he asked Tyler to come with him. 5 RP at 780. Maples said that they brought the gun for protection in case something went wrong. A detective asked if they brought the gun because Maples was concerned about "getting jacked," and Maples answered, "Yeah." 5 RP at 783. Accordingly, there is sufficient evidence of an "intimate connection" between the shooting and the crime.

III.     INSUFFICIENT EVIDENCE FOR ASSAULT

Finally, Maples argues that there is insufficient evidence to support his conviction for first degree assault because the State failed to prove that Tyler meant to shoot at Foreman or that Maples was an accomplice to Tyler's actions. We disagree.

---

[2] The *Leech* court noted that courts have required a closer causal connection when the intervening cause is a mere coincidence rather than a response to the defendant's actions. 114 Wn.2d at 705 (quoting 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.5, at 214 (1986)). Where the intervening cause is coincidental, foreseeability is required; where it is a response to the defendant's actions, the question is whether the intervening act was abnormal. *Leech*, 114 Wn.2d at 705 (quoting 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.5, at 214 (1986)).

First, Maples argues that there is insufficient evidence that Tyler intended to shoot Foreman because there is no evidence that Tyler knew there was a passenger in the car. Because the first degree assault statute does not require that the specific intent to inflict great bodily harm match a specific victim, Maples's argument fails.

A person is guilty of first degree assault if, with intent to inflict great bodily harm, he assaults another with a firearm. RCW 9A.36.011(1)(a). A person acts with intent when he acts with the objective or purpose to accomplish a result constituting a crime. RCW 9A.08.010(1)(a). Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). "Great bodily harm" means "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). An assault may be (1) an attempt to inflict bodily injury upon another, (2) an unlawful touching with criminal intent, (3) or putting another in apprehension of harm whether or not the actor intends to inflict harm. *Wilson*, 125 Wn.2d at 218 (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993)). First degree assault does not, under all circumstances, require that the specific intent match a specific victim. *Wilson*, 125 Wn.2d at 218.

In *State v. Elmi*, 166 Wn.2d 209, 207 P.3d 439 (2009), our Supreme Court affirmed the defendant's convictions for first degree assault against three unintended victims. There, the defendant fired shots into a house where his estranged wife was staying with three children. *Elmi*, 166 Wn.2d at 212. The jury convicted him on four counts of first degree assault. *Elmi*, 166 Wn.2d at 213. The defendant argued that the State did not prove specific intent to assault the children. *Elmi*, 166 Wn.2d at 214. The court disagreed, holding that, where a defendant

9

intends to shoot into and to hit someone occupying a house or a car, he bears the risk of multiple convictions when multiple victims are present, regardless of whether the defendant knows of their presence. *Elmi*, 166 Wn.2d at 218.

Here, Maples does not dispute that Tyler fired five shots into the driver's side of the car specifically intending to inflict great bodily harm on the driver. Although Tyler may not have known of Foreman's presence, an assault may be committed by putting another in apprehension of harm, even if the actor does not intend to inflict harm. *See Wilson*, 125 Wn.2d at 218. Therefore, under *Elmi*, Tyler—and, through accomplice liability, Maples—bore the risk of assault convictions for any passengers in the car, whether or not they knew of their presence.

Next, Maples argues that there is insufficient evidence that he acted as an accomplice to Tyler's assault of Foreman. Because there is sufficient evidence for the jury to infer that Maples requested Tyler to act, we disagree.

A person is guilty of a crime committed by another if he is an accomplice to the commission of the crime. RCW 9A.08.020(1), (2)(c). A person is an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, or requests the other person to commit the crime or aids or agrees to aid the other in planning or committing the crime. RCW 9A.08.020(3)(a). Physical presence and assent, without more, are insufficient to establish accomplice liability. *State v. Roberts*, 80 Wn. App. 342, 355-56, 908 P.2d 892 (1996).

There is sufficient evidence that Maples acted as an accomplice. Tyler was present at the drug deal only because Maples asked him to be. Maples knew that Tyler had a gun, and, in fact, Tyler brought the gun because Maples was concerned about the buyers' behavior and wanted some protection. Additionally, after Foreman attempted to pay with counterfeit money, Maples

10

got out of the car and told Tyler that he had just been robbed. It was reasonable for the jury to infer that this was a request for Tyler to act. Accordingly, there is sufficient evidence to support Maples's assault conviction.

IV.    SAG

In his SAG, Maples argues that his right to confront his accuser was violated because Foreman did not testify at his trial. The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to confront witnesses against him. *State v. Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982) (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross examination." *Parris*, 98 Wn.2d at 144. Here, although Foreman did speak with police after the shooting, the State did not attempt to introduce any of his statements. Therefore, Foreman was not actually a witness against Maples and Maples's rights were not violated by Foreman's failure to appear at trial.

Further, the Sixth Amendment protects defendants from *government* interference with the right to conduct a defense. *State v. McCabe*, 161 Wn. App. 781, 787, 251 P.3d 264 (2011). Accordingly, a defendant's Sixth Amendment rights are not violated where "the obstacle to a defendant's getting what he perceives as the full benefit of his Sixth Amendment right is not government interference, but an uncooperative witness." *McCabe*, 161 Wn. App. at 787. Here, Maples's inability to confront Foreman was not due to any action or failure to act by the State or the trial court; rather, it was due to Foreman's lack of cooperation. In fact, the State obtained a material witness warrant for Foreman, but it could not locate him. Maples's argument fails.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Johanson, A.C.J.

_____
Bjorgen, J.