FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9:28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 43907-7-II |
| v. | |
| PAUL KENT, SR., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Paul Kent appeals his conviction on two counts of unlawful delivery of a controlled substance (heroin and methamphetamine) and the imposition of sentencing enhancements because the transactions occurred within 1,000 feet of a school bus route stop. Kent argues that the trial court erred in admitting an informant's body wire recording of the methamphetamine transaction, refusing to give an affirmative defense instruction for the school bus stop sentencing enhancement, and entering a judgment and sentence containing a scrivener's error.

We hold that (1) the trial court properly admitted the body wire recording because Hendrickson brought Kent into the transaction under RCW 9.73.230(3), and (2) the trial court erred when it declined to give the affirmative defense instruction for the school bus stop

enhancement because Kent presented sufficient evidence supporting each element of the defense. Accordingly, we affirm the convictions but reverse the school bus stop sentencing enhancements and remand for trial. Because of this resolution, the scrivener's error in the sentence is moot.

FACTS

On September 20, 2011, JC, a confidential informant for the Longview Police Department, agreed to perform a controlled heroin purchase from Roger Hendrickson at his trailer. JC testified that when she was inside the residence she told Hendrickson she wanted to buy heroin and gave him the money to purchase it. Hendrickson then sent Kent to another residence to get the heroin, and after Kent returned, he handed the heroin to Hendrickson. Hendrickson then gave the heroin to JC.

An officer conducting surveillance of Hendrickson's trailer recognized Kent from previous encounters and saw him in front of the trailer before JC arrived. When JC arrived at the trailer, Kent entered and JC followed shortly thereafter. The officer then observed Kent leave the trailer and return a few minutes later. Soon after Kent returned, JC left with the heroin.

Based on JC's and the officer's observations from the September 20 controlled purchase, a police detective obtained authorization to record JC at an anticipated purchase from Hendrickson on September 30. The detective prepared a report consistent with RCW 9.73.230(2), detailing the nature of the transaction and the anticipated parties involved. The report named Hendrickson as the target.

On September 30, officers gave JC a wire to wear during the anticipated purchase from Hendrickson. JC testified that she entered Hendrickson's trailer and asked him for methamphetamine. The record is conflicting as to what took place next. JC's initial testimony

2

appeared to show that, just as on the September 20 purchase, Kent already was in the trailer when she arrived. She stated that Hendrickson took her money, combined it with some of his own money, and gave it to Kent. He then directed Kent to "go over and get [the drugs]." Report of Proceedings (RP) at 164. Kent left and returned with two bags, which he handed to Hendrickson. Hendrickson then handed one of the bags to JC, and she left. The observing officer saw JC enter Hendrickson's trailer and, a short time later, saw Kent leave and then return to the trailer. A few minutes later, JC left the trailer and gave methamphetamine to the officers.

However, the wire recording reveals that Kent was not in the trailer when JC arrived. Rather, the recording shows that JC asked Hendrickson for methamphetamine and, because Hendrickson did not have any, he directed JC to call Kent. The recording then shows that JC called Kent and asked him for methamphetamine, and only then did he arrive at the trailer with the two bags. And JC later testified that the September 30 transaction was different from the September 20 transaction because on the 30th, Hendrickson directed her to call Kent.

The State charged Kent with two counts of unlawful delivery of a controlled substance – one for the heroin delivery and one for the methamphetamine delivery – within 1,000 feet of a school bus route stop. Before trial, Kent moved to suppress the recording of the methamphetamine transaction. He argued that the authorization to record the conversation did not list him specifically as required by RCW 9.73.230(2)(d) and he was not "brought into the conversation" by Hendrickson as permitted by RCW 9.73.230(3). Clerk's Papers at 6-7. The trial court denied the motion, concluding that the recording was authorized under RCW 9.73.230(3) because Hendrickson brought Kent into the conversation.

At trial, Kent requested an instruction consistent with RCW 69.50.435(4), asserting that it

3

is an affirmative defense to the school bus stop sentencing enhancement if the conduct took place entirely within a private residence, there was no one under the age of 18 in the residence at the time of the transaction, and the transaction did not involve profit. The trial court declined to provide the instruction, reasoning that the evidence did not support a finding that the delivery took place entirely within a private residence.

The jury found Kent guilty as charged and found that the transactions occurred within 1,000 feet of a school bus route stop. The trial court sentenced him to 88 months' confinement, including two, 24-month consecutive sentence enhancements for the school bus stop violation. Kent appeals.

## ANALYSIS

A. MOTION TO SUPPRESS RECORDING

Kent argues that the trial court erred in denying his motion to suppress the recording of the controlled methamphetamine purchase because Hendrickson did not bring him into the conversation or transaction as required by RCW 9.73.230(3). We disagree.

1. Standard of Review

We review a trial court's conclusions of law on a suppression motion de novo. *State v. Cole*, 122 Wn. App. 319, 322–23, 93 P.3d 209 (2004). This case requires interpretation of RCW 9.73.230, a question of law that we review de novo. *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000). "In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent." *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). " '[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)

4

(alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We discern the plain meaning of a statutory provision "from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Jacobs*, 154 Wn.2d at 600. "We construe a statute to effectuate its purpose while avoiding absurd, strained, or unlikely consequences." *State v. Villanueva*, __ Wn. App. __, 311 P.3d 79, 82 (2013).

If after this analysis, the statutory provision is subject to more than one reasonable interpretation, it is ambiguous. *Jacobs*, 154 Wn.2d at 600-01. "If a statute is ambiguous, the rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary." *Jacobs*, 154 Wn.2d at 601.

2. Compliance with RCW 9.73.230(2)

Washington's privacy act, chapter 9.73 RCW, generally prohibits the interception or recording of any private conversation without the consent of all persons engaged in the conversation. RCW 9.73.030(1)(b); *State v. Barron*, 139 Wn. App. 266, 273, 160 P.3d 1077 (2007). However, under RCW 9.73.230(1), an agency's chief law enforcement officer or designee may authorize the interception, transmission, or recording of a conversation or communication as part of a criminal investigation if (a) at least one party to the conversation or communication has consented to the recording, (b) probable cause exists to believe that a conversation or communication involves a drug transaction, and (c) a written report detailing the planned action has been completed.

RCW 9.73.230(2) outlines several requirements for the written report mandated under RCW 9.73.230(1)(c). One of the requirements is that the report contain "[t]he identity of the

particular person or persons, if known, who may have committed or may commit the offense." RCW 9.73.230(2)(d). Kent notes that he was not named in the report submitted to obtain authorization for the recording. However, he did not argue below and provides no specific argument on appeal that RCW 9.73.230(2)(d) required the Longview Police Department to name him in the authorization report. Accordingly, we need not address this issue.

3. Validity of Authorization under RCW 9.73.230(3)

The trial court concluded that although Kent was not named in the authorization report, the recording was valid as to him because he was brought into the conversation by Hendrickson as required by RCW 9.73.230(3). Kent argues that the trial court erred in ruling that Hendrickson brought Kent into the conversation or transaction by suggesting that JC call him. We disagree.

RCW 9.73.230(3) provides:

> An authorization under this section is valid in all jurisdictions within Washington state and for the interception of communications from additional persons if the persons are brought into the conversation or transaction by the nonconsenting party or if the nonconsenting party or such additional persons cause or invite the consenting party to enter another jurisdiction.

(Emphasis added.) Kent was not named in the authorization report and therefore he was an "additional person[ ]" under RCW 9.73.230(3). As a result, the recording was valid as to his conversations only if he was "brought into the conversation or transaction" by Hendrickson, the nonconsenting party.[1] RCW 9.73.230(3).

When JC asked Hendrickson for methamphetamine on September 30, Hendrickson said

---

[1] We need not address whether RCW 9.73.230(3) is subject to an interpretation that it only applies to "additional persons" in non-Washington jurisdictions because the State did not argue below or on appeal that this subsection is inapplicable here.

he did not have any and directed JC to call Kent. JC then called Kent and asked him for methamphetamine, and only then did he arrive at the trailer with the two bags. Kent focuses on the fact that JC and not Hendrickson actually initiated the conversation with him. Arguably, Hendrickson did not bring Kent into the conversation because Hendrickson did not make the phone call to Kent.

However, RCW 9.73.230(3) also provides that an authorization is valid if the nonconsenting party brings the additional person into a "transaction." The transaction here was JC's attempt to purchase drugs from Hendrickson. Hendrickson clearly brought Kent into this transaction when he suggested that JC could obtain the drugs from Kent. Accordingly, we hold that the authorization to obtain a wire recording was valid as to Kent under RCW 9.73.230(3).

B. AFFIRMATIVE DEFENSE INSTRUCTION

The State charged Kent with delivery of heroin and methamphetamine within 1,000 feet of a school bus route stop, which allows a sentencing enhancement under RCW 69.50.401(1) and RCW 69.50.435(1)(c). Under RCW 69.50.435(4), it is an affirmative defense to the school bus stop sentencing enhancement that (1) the prohibited conduct took place entirely within a private residence, (2) no person younger than eighteen years old was present when the offense occurred, and (3) the prohibited conduct did not involve receiving a profit relating to a controlled substance. Kent argues that the trial court erred when it denied his request that the jury be instructed on this affirmative defense. We agree.

The defendant bears the burden of proving the elements of the affirmative defense by a preponderance of the evidence. RCW 69.50.435(4); *State v. Deer*, 175 Wn.2d 725, 734, 287 P.3d 539 (2012). "In evaluating whether the evidence is sufficient to support a jury instruction

7

on an affirmative defense, the court must interpret it most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility, which are exclusive functions of the jury." *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956 (2000). When a trial court denies a request for an affirmative defense instruction for lack of evidentiary support, we normally review the decision for abuse of discretion. *State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010). However, we review a trial court's refusal to give an instruction based on a legal ruling de novo. *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

The trial court ruled that the prohibited conduct under RCW 69.50.435, Kent's "deliver[y]" of a controlled substance to JC, did not occur entirely within Hendrickson's private residence because Kent's transportation of the methamphetamine from its original location outside the trailer to Hendrickson's trailer was part of the "delivery." RP at 247. RCW 69.50.101(f) defines "delivery" as "the actual or constructive transfer from one person to another of a substance." The statute does not define "transfer," but courts define the term as " 'to cause to pass from one person or thing to another' " or " 'to carry or take from one person or place to another.' " *State v. Ramirez*, 62 Wn. App. 301, 308–09, 814 P.2d 227 (1991) (citing *State v. Campbell*, 59 Wn. App. 61, 64, 795 P.2d 750 (1990) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2426–27 (1971)); *see also State v. Morris*, 77 Wn. App. 948, 951, 896 P.2d 81 (1995).

Under these definitions, the trial court's interpretation of "delivery" is too broad. If delivery included transporting a controlled substance from one location to another, each subsequent person involved in transporting the substance to its final destination would be involved in the same "delivery." We avoid this strained reading of the term and instead hold that

the delivery here took place when the methamphetamine transferred from Kent's possession to Hendrickson's possession. Under this interpretation, the uncontroverted evidence in the record establishes as a matter of law that the delivery took place entirely within Hendrickson's private residence.

Kent also presented sufficient evidence to satisfy the other elements of the defense. JC testified that everyone in the trailer was over the age of 18. And JC testified that Kent received no benefit from the transaction, supporting a finding that he did not engage in the delivery "for profit." Accordingly, we hold that the trial court erred in refusing to instruct the jury on the affirmative defense under RCW 69.50.435(4). We reverse and remand for a new trial on the sentence enhancement.

## C.    SCRIVENER'S ERROR IN THE JUDGMENT AND SENTENCE

Kent argues, and the State concedes, that a scrivener's error exists in the judgment and sentence. The trial court sentenced Kent to 40 months' confinement plus 24 months' confinement on the sentencing enhancement for each conviction, with the sentences to be served concurrently. Adding the 24-month sentence enhancements to the 40-month sentences on the underlying offenses produces a 64-month sentence on each offense. However, the judgment and sentence erroneously states that the total confinement for each offense was 88 months. Because we reverse the sentence enhancements, this issue is moot.

We affirm Kent's convictions but reverse the sentencing enhancements. We remand to the trial court to impanel a jury to decide the school bus stop aggravator and to resentence

No. 43907-7-II

accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
PENOYAR, J.

_____
LEE, J.