# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON , | DIVISION ONE |
| Respondent, | No. 78481-1-I |
| v. | UNPUBLISHED OPINION |
| CHAZ MYKEL ANDERSON, | |
| Appellant. | FILED: September 16, 2019 |

DWYER, J. — After a bench trial, Chaz Mykel Anderson was convicted of theft in the third degree, possession of drug paraphernalia, and possession of a controlled substance with intent to deliver the substance. On appeal, he does not challenge the first two of these convictions. He does contend that insufficient evidence supported the finding that he intended to deliver a controlled substance. As his testimony unambiguously supported the finding that he did have such intent, we affirm.

I

Chaz Anderson was seen shoplifting underwear and other items in a department store and was arrested on suspicion of theft. A search incident to his arrest yielded not only the stolen items but several syringes and pipes, small clear plastic bags, and 35 grams of heroin. The record does not indicate whether a cell phone or any quantity of money was found on Anderson's person.

Anderson was charged by amended information with theft in the third degree, possession of drug paraphernalia, and possession of a controlled

substance with intent to manufacture or deliver the substance. Anderson waived his right to be tried by a jury and his case proceeded to a bench trial.

At trial, Anderson testified in his own defense, admitting that he had committed theft and possessed drug paraphernalia. Anderson also testified that he had been addicted to heroin for several years and that his girlfriend at the time he was arrested was a heroin user. He admitted that he accepted money from his girlfriend to buy the heroin he possessed and stated that the amount which was found on his person was for their shared use:

> Q: Okay. And you said that your significant other at the time was also using and also helping pay for some of this; correct?
> A: Yes.
> Q: And how much do you think she was contributing each month?
> A: About—about half.
> Q: Okay. And then you would go to some sort of location, either by bus or by car, with both of those sums of money and purchase heroin?
> A: Yes.
> Q: Okay. And then how—how exactly would you divvy it up to give her her share and give—keep your own share?
> A: It was—I mean, we basically would use together. We—that's kind of just—it just stayed in one spot, and when we got high, we would get high together.
> Q: So you would keep it all on you until you were both together to use; is that correct?
> A: Well, I certainly wouldn't leave it at a place that wasn't my place. And if she was at work, then I would have it on me, or vice versa.

Anderson was convicted on all counts. The trial court inferred that Anderson intended to deliver the heroin from Anderson's remarks about sharing the substance with his girlfriend. Anderson received a drug offender sentencing alternative, pursuant to which 20 months of confinement and 20 months of community custody were imposed. He appeals.

II

Anderson contends that insufficient evidence supports his conviction. This is so, he asserts, because the State failed to present sufficient evidence that Anderson had an intent to deliver the heroin. We disagree.

The due process clause of the Fourteenth Amendment requires that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV, § 1. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

A claim of evidentiary insufficiency admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We defer to the trier of fact on questions of conflicting testimony and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

In order to convict Anderson as charged, the State had to prove that he acted with the specific intent to deliver the heroin. "Specific intent to deliver a controlled substance is a statutory element of the crime of possession with intent

3

to deliver." State v. Hernandez, 95 Wn. App. 480, 484, 976 P.2d 165 (1999) (citing former RCW 69.50.401(a)(1) (1998)). "Intent is assessed objectively, rather than subjectively." Hernandez, 95 Wn. App. at 484 (citing State v. Rodriguez, 61 Wn. App. 812, 816, 812 P.2d 868 (1991)). "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a); State v. Atsbeha, 142 Wn.2d 904, 918, 16 P.3d 626 (2001). Specific intent cannot be presumed, but it can be inferred as a logical probability from all of the facts and circumstances. State v. Davis, 79 Wn. App. 591, 594, 904 P.2d 306 (1995).

Intent to deliver cannot be inferred from mere possession of a controlled substance. State v. Harris, 14 Wn. App. 414, 418, 542 P.2d 122 (1975). However, intent to deliver can be inferred when all of the facts and circumstances indicate that there is possession of a controlled substance plus "at least one additional factor." State v. Brown, 68 Wn. App. 480, 484, 843 P.2d 1098 (1993). Here, the additional factor is Anderson's stated intent to transfer heroin to his girlfriend. As the trial court observed:

> While the grams are high, they're not beyond a reasonable explanation for two and a half weeks' use. I would—as I indicated, just based upon those facts that were established, I would not find him guilty of possession with intent [to deliver].
> But there are additional facts that have been developed, and those additional facts are Mr. Anderson's direct testimony, and that direct testimony does support the intent—possession with intent to deliver. And that testimony, as—as developed by cross-examination, was that essentially the purchase of these drugs—as is a common practice—but specifically in regards to these drugs, as the prosecutor elicited where the money came from, a combination of his money and his girlfriend's money to purchase the drugs that they would use together. And the routine is is that somebody would

4

> hold onto them, and generally he would, and that they would get together and use the drugs.
>
> That meets the definition of delivery, . . . it meets the definition of a giving or handing over distribution of a good. . . .
>
> And Mr. Anderson's direct testimony is that he's going to distribute this drug to his girlfriend, either then or in the immediate future. I don't know how I can get around his direct testimony.

Anderson cites to State v. Morris, 77 Wn. App. 948, 896 P.2d 81 (1995), for the proposition that an accused must intend to wholly relinquish control of a quantity of a controlled substance to be convicted of possession of the substance with intent to deliver. In Morris, the defendant was charged with, and convicted of, delivery after buying cocaine from an undercover agent. 77 Wn. App. at 949. The issue on appeal was "whether a purchaser 'delivers' a controlled substance, within the meaning of the statutory definition of 'deliver'." Morris, 77 Wn. App. at 949. The court looked to several dictionary definitions of the word "transfer," which the legislature has not defined, and stated that "transfer" contemplates the "active task of relinquishing control to another." Morris, 77 Wn. App. at 951. By accepting rather than relinquishing control, the court reasoned, a buyer does not "transfer" or "deliver" the substance from the seller. Morris, 77 Wn. App. at 951.

Anderson contends that he and his girlfriend had joint possession of the heroin, and that he could not "transfer" the heroin to a joint possessor. The argument is, essentially, that Anderson purchased and held his girlfriend's share of the heroin on her behalf—effectively creating an agency relationship. Prior to the adoption of the Uniform Controlled Substances Act, chapter 69.50 RCW, "a showing that the defendant was an agent solely of the purchaser and not of the seller in a drug transaction was a defense to prosecution." State v. Matson, 22

Wn. App. 114, 117, 587 P.2d 540 (1978) (citing State v. Catterall, 5 Wn. App. 373, 486 P.2d 1167 (1971)).

This defense, however, was wholly foreclosed by the language of the Uniform Controlled Substances Act, which defines "delivery" as follows:

> "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a substance, *whether or not there is an agency relationship*.

RCW 69.50.101(h) (emphasis added).

"[T]he [Uniform Controlled Substances Act] . . . eliminates the distinction between whether a buyer or seller acts as a principal or agent so long as an illegal transfer of a controlled substance occurs." Matson, 22 Wn. App. at 118. The act "criminalize[s] *participation* in the transfer of unlawful drugs, regardless of whether the participation benefited the buyer or the seller." State v. Ramirez, 62 Wn. App. 301, 308, 814 P.2d 227 (1991). Thus, it is of no import whether Anderson acted primarily for the benefit of himself or his girlfriend—he testified to his intent to transfer the substance to another person. This evidence amply supports the trial court's finding that Anderson possessed a controlled substance with the intent to deliver the same.

Affirmed.

_____

WE CONCUR:

_____          _____