STATE of Wisconsin, Plaintiff-Respondent,

v.

Earlann WILSON, Defendant-Appellant.†

Court of Appeals

*No. 93–1490–CR. Submitted on briefs October 4, 1993.—Decided November 24, 1993.*

(Also reported in 509 N.W.2d 128.)

†Petition to review denied.

414

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J. Earlann Wilson was convicted of delivering cocaine contrary to sec. 161.41(1), Stats., as

a direct actor under sec. 939.05(2)(a), Stats. She claims that she was denied her constitutional right to effective assistance of counsel when trial counsel failed to object to a nonpattern jury instruction defining "deliver" as a transfer that is "direct . . . or indirect." Wilson contends that the instruction did not fairly state the law because it presented a contradiction in terms, that is, a direct actor cannot indirectly deliver a substance. She further contends that the instruction confused the jury because the law does not define "indirect delivery."

The issue is whether the jury instruction was consistent with the statutory definition of "deliver" provided in sec. 161.01(6), Stats. We hold that the jury instruction was consistent with the statutory definition and that the failure to object to the instruction was not ineffective assistance of counsel.

Wilson raises two other issues in this appeal. Because we hold that the jury instruction was not erroneous, we also deny Wilson's request to grant a new trial in the interest of justice on the ground that the real issue was not fully tried. We further hold that the circumstantial evidence was sufficient to convict Wilson on a direct actor theory.

On May 17, 1991, Gerald Bisping, a former neighbor of Wilson's, called Wilson from the police department asking to purchase cocaine. Bisping then agreed to go to the pay phone in the parking lot of an Open Pantry and make a call to Wilson's house, letting the phone ring once. A narcotics investigator gave Bisping $250 to buy the cocaine. Once Wilson arrived at the parking lot, she and Bisping went to a nearby video store where Bisping gave Wilson the $250. Wilson left the store and, when she returned some time later, she told Bisping to meet her at Omni Glass. When Bisping arrived at Omni, Wilson got into the car

with him and directed him where to drive. When they got out of the car, they walked to an area of rocks and Wilson indicated the location of the cocaine under one of the rocks. Bisping walked to the rock and picked up a packet of cocaine from under it.

At trial during an instructions conference, Wilson argued and the trial court agreed that there were no facts on which to base an instruction for aiding and abetting or conspiracy. Instead, the case was submitted to the jury on the theory that Wilson directly committed the offense. The trial court also instructed the jury, defining "deliver" as: "to transfer something from one person to another. A transfer may be direct, that is, hand to hand, or indirect, that is, like any other intentional transfer." Trial counsel posed no objection to this instruction.

At the postconviction hearing, Wilson's appellate counsel argued against the propriety of the foregoing instruction: "Where someone takes a bindle and puts it somewhere and leaves it there as an alleged direct delivery, I would say it is not a delivery. I would say it is not actionable under some of the various liability theories [under sec. 939.05(2), Stats.]." Conversely, Wilson's trial counsel testified that he thought that the jury instruction fairly represented the statutory definition of "deliver." The trial court concluded: "[A] transfer need not be physically hand to hand as long as it is intended and the facts presented to the jury . . . supported a finding that it was intentional. . . . [A] direct act may be broader than merely handing something to somebody. . . ."

## INEFFECTIVE ASSISTANCE OF COUNSEL

To prove a denial of the sixth amendment right to effective assistance of counsel, Wilson must show that counsel's performance was deficient and that the deficiency prejudiced her defense. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 847-48 (1990). In determining whether counsel deficiently performed, we review from counsel's perspective at trial, and "the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *See id.* Whether the failure to object constituted ineffective assistance initially depends on whether the jury instruction defined "deliver" in accordance with the definition provided in sec. 161.01(6), Stats. Thus, we apply a statute to a particular set of facts and we review this question of law *de novo. See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758-59, 300 N.W.2d 63, 68 (1981).

A trial court has wide discretion in the development of jury instructions, but the chosen instructions must accurately and fairly state the law. *State v. Waalen*, 125 Wis. 2d 272, 274, 371 N.W.2d 401, 402 (Ct. App. 1985), *aff'd*, 130 Wis. 2d 18, 386 N.W.2d 47 (1986). We must decide whether the words used to instruct the jury—"[a] transfer . . . that is . . . indirect"—fairly represent the statutory definition of "deliver" provided in sec. 161.06(6), Stats., in the context of the facts of this case.

First, we consider the definition of "deliver" provided in sec. 161.01(6), Stats. Wisconsin's Uniform Controlled Substances Act defines "deliver" as "the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or

not there is any agency relationship." Section 161.01(6). The meaning of "constructive transfer" is at issue in this case.

Wilson contends that an indirect transfer is not the same as a constructive transfer and, in fact, has no meaning in drug cases. Citing *State v. Hecht*, 116 Wis. 2d 605, 342 N.W.2d 721 (1984), Wilson implicitly argues that because she did not physically hand the cocaine to anyone, she could not be a direct actor. She argues that one can be a direct actor either by actual hand-to-hand delivery or by constructive delivery, which she contends must involve an agent, but not by an indirect transfer, such as here, using a place or inanimate object.

In *Hecht*, our supreme court held that the defendant did not commit the crime as a direct actor where he was not present during the exchange of a controlled substance between a third party and an undercover agent. *Id.* at 618, 342 N.W.2d at 728. However, the case was submitted to the jury on aiding and abetting and conspiracy theories. The evidence showed that the defendant facilitated delivery, but did not possess the ability to assure delivery. Wilson equates her conduct with the conduct of the defendant in *Hecht*. However, unlike *Hecht*, here there is ample circumstantial evidence from which the jury could conclude that Wilson "constructively," and acting alone, delivered the cocaine.

Furthermore, *Hecht* does not stand for the proposition that a person has to be present during the exchange to be a direct actor. Certainly, presence during a transaction is probative of whether one either directly commits a crime or aids and abets the commission of a crime, but it neither establishes one's status as a direct actor nor negates one's status as an aider and

abettor. We hold that *Hecht* does not control in this case.

According to our independent research, Wisconsin case law does not define constructive transfer or delivery. However, we stated in *State v. Clemons*, 164 Wis. 2d 506, 512, 476 N.W.2d 283, 285 (Ct. App. 1991), that, in some circumstances, one can deliver a controlled substance without having possessed it. In that case, the defendant put a milk carton of methadone between the bucket seats of his car, told the passenger in his car what it was, and the passenger, without prompting from the defendant, took a drink of it. The defendant argued that he did not deliver the methadone to his passenger. However, the jury found that the defendant had delivered the methadone and we upheld the jury's finding. *Id.* at 512-13, 476 N.W.2d at 285. Thus, we contemplated that a direct actor could constructively deliver a substance by means other than a physical hand-to-hand transfer.

Next, we consider the meaning of "indirect transfer." Indirect means "not proceeding to an intended end by the most direct course or method." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1151 (unabr. 1976). Transfer means "to cause to pass from one person or thing to another." *Id.* at 2427. In the context of this case, to indirectly transfer means to cause to pass from one person to another by a method other than the most direct. Considering this definition, we agree with the trial court's conclusion that a constructive transfer need not be hand to hand. Instead, the defendant's intent to transfer and the effectuation of that transfer are the determinative factors. A direct actor can use another person, a place or an object to indirectly trans-

422

fer a substance. The essence is the intent to transfer and the ability to cause that transfer.

We decide against Wilson because we hold that a constructive delivery can occur between two persons. The term "constructive delivery" is not limited to multiple-defendant scenarios. If the facts of the case show the involvement of a third person, then conspiracy and aiding and abetting theories may apply. However, a direct actor need not be actually present during a delivery. A direct actor can be constructively present if he or she leaves a substance somewhere for later retrieval by another. *See* W. LAFAVE & A. SCOTT, CRIMINAL LAW 497 (1972).

We further hold that the words "indirectly transfer" fairly represent "constructive transfer" within the meaning of sec. 161.01(6), Stats. Therefore, Wilson was not denied her sixth amendment right to effective assistance of counsel because the failure to object to the jury instruction was not deficient performance.[1]

---

[1] We caution that even if we had held that the jury instruction was improper, that would not have ended the inquiry about whether counsel's performance was deficient.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984).

## REVERSAL IN THE INTEREST OF JUSTICE

■

Wilson contends that we should exercise our discretionary reversal power under sec. 752.35, Stats., on the ground that the errant jury instruction confused the jury and, accordingly, the real controversy was not tried. *See Vollmer v. Luety*, 156 Wis. 2d 1, 4, 456 N.W.2d 797, 799 (1990). Because we hold that the jury instruction was not confusing and the instruction fairly represented the law, we decline to exercise our discretionary reversal power under sec. 752.35.

## INSUFFICIENT EVIDENCE

■

Wilson argues that the evidence was insufficient to support her conviction as a direct actor on the charge of delivery of cocaine. Before an appellate court can overturn a jury verdict for insufficiency of the evidence, "the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced . . . beyond a reasonable doubt." *Martin v. State*, 87 Wis. 2d 155, 161, 274 N.W.2d 609, 611 (1979) (citation omitted).

■

We hold that the circumstantial evidence was sufficient to show that Wilson placed the cocaine under the rock. Wilson negotiated the sale on the phone and collected $250 in payment. She directed Bisping to the rock's location, and she told Bisping that the cocaine would be under the rock and it was. From this evidence, the jury could infer that Wilson put the cocaine under the rock—that she indirectly or constructively

delivered the cocaine to Bisping. We affirm the conviction.

*By the Court.*—Judgment and order affirmed.