COURT OF APPEALS
DECISION
DATED AND FILED

June 18, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1879-CR**

Cir. Ct. No. **2019CF138**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHAWN D. CARNEY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed.*

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Shawn Carney, pro se, appeals a judgment of conviction for possession of cocaine with intent to deliver following a jury trial

and the circuit court's denial of his postconviction motion for relief and motion to reconsider, which were based on claims that the evidence was insufficient and that the State committed prosecutorial misconduct. We conclude that the evidence at trial was sufficient to support the jury's verdict on the cocaine charge and that Carney fails to develop the claim of alleged prosecutorial misconduct. Accordingly, we affirm.

## Background

¶2 Carney was riding in the front passenger seat of a vehicle that was pulled over by police officer Todd Radloff because it had no working taillights. After Radloff activated his squad car's emergency lights, but before the vehicle that Carney was in came to a stop, Radloff saw a white object larger than a snowball being thrown out of the front passenger window of the vehicle. Radloff then saw a second, much smaller object being thrown out of the same window. He called for other officers to assist him in retrieving these thrown objects. The officers recovered a small baggy holding a substance later identified as heroin. They also found chunks of the larger object, later confirmed to be cocaine, which had broken into pieces when it hit the curb and was dissolving into the snowbank along the road. When Carney was ordered out of the vehicle, Radloff observed white powder on Carney's pants. No white powder was observed on either of the other two people in the vehicle with Carney. Officers found additional cocaine on the front passenger seat and on the floor in front of that seat. They also found $1,875, including 73 twenty-dollar bills, on Carney's person.

¶3 Carney was charged with one count of possession of heroin with intent to deliver and one count of possession of cocaine with intent to deliver. At a jury trial, officers testified as to the details above regarding the traffic stop and

Carney's arrest. Radloff further testified that, in his experience, the quantity of drugs Carney possessed and the amount of money found on Carney were consistent with drug resale rather than personal drug use. Another officer, Aaron Dammen, testified to the following: approximately 4.7 grams of heroin and more than 13 grams of cocaine were recovered and weighed; while the heroin was contained in a baggy, the cocaine was "found in large chunks throughout the snow banks" along the side of the road, and was "just starting to become wet on the bottom." Consistently with Radloff's testimony on the same point, Dammen testified that "people that we come across with this amount of drugs … are doing some form of dealing" and that the amounts in this case are higher than a typical user would have for personal consumption.

¶4    Durante Carr, the backseat passenger of the vehicle during the incident described above, also testified at trial. Carr testified that Carney was the front seat passenger in the vehicle at the time of the incident. Further, Carr confirmed that, shortly after the incident, Carr had told officers that Carney had just thrown objects out of the vehicle and made it look as though it was snowing. At the conclusion of Carr's testimony, the prosecutor asked Carr to confirm that he was granted immunity for his testimony, which meant that he "cannot be prosecuted for anything [he said,] as long as [he] testif[ied] truthfully." Carr confirmed that he had been granted immunity.

¶5    During the State's rebuttal closing argument, the prosecutor reminded the jury that Carr "was given immunity, which means anything he testified to could not be used against him, unless he testified falsely." The prosecutor continued:

> So Mr. Carr could have got up on the stand and said, yes, I
> threw the cocaine out the window and there's nothing the

> State could have done about it, except prosecute him for perjury for falsely claiming the cocaine was his. He didn't do that because he knew that it was [Carney] who threw the cocaine out the window.

Carney, who had been granted permission to represent himself (with former counsel as standby) at this point in the trial, did not object.

¶6    The jury found Carney guilty of possessing cocaine with intent to deliver. On the heroin charge, the jury found Carney guilty of the lesser offense of possession of heroin, but not of possession with intent to deliver.

¶7    Carney filed a motion for postconviction relief, arguing that the prosecutor's comments to the jury about Carr's immunity constituted prosecutorial misconduct and that the State introduced insufficient evidence to support his conviction for possessing cocaine with the intent to deliver.[1] After conducting an evidentiary hearing, the circuit court denied Carney's motion. The court also denied Carney's motion for reconsideration. Carney appeals.

## Discussion

¶8    We first address Carney's claim challenging the sufficiency of the evidence on the cocaine charge. Specifically, Carney argues that the evidence of the two types of drugs that he possessed and the cash found on his person was insufficient to support the jury verdict on the charge of possession of cocaine *with intent to deliver*, because the evidence provided no basis for the jury to reasonably infer that Carney intended to sell the cocaine. He also argues that the jury's return of a verdict of guilty on only the charge of possession of heroin—and not

---

[1] Although his postconviction motion included other asserted grounds for relief, Carney has abandoned these other grounds on appeal.

4

possession with intent to deliver heroin as charged—is inconsistent with, and requires vacating, the verdict on the cocaine delivery charge.

¶9    "This court independently reviews whether the evidence was sufficient to sustain the jury verdict, 'but in so doing, we view the evidence most favorably to sustaining the conviction.'" *State v. Hibbard*, 2022 WI App 53, ¶9, 404 Wis. 2d 668, 982 N.W.2d 105 (quoting *State v. Hanson*, 2012 WI 4, ¶15, 338 Wis. 2d 243, 808 N.W.2d 390). "[A] defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681. If the evidence, including both direct and circumstantial evidence, supports more than one reasonable inference, this court "must accept and follow the inference drawn by the [jury] unless the evidence on which that inference is based is incredible as a matter of law." *State v. Poellinger*, 153 Wis. 2d 493, 506-07, 451 N.W.2d 752 (1990).

¶10    Here, the State presented evidence that: Carney threw cocaine out of a moving vehicle from the front passenger seat; the cocaine the officers were able to recover from that area of the vehicle and the snowbank into which the cocaine was thrown amounted to more than thirteen grams; and Carney was carrying $1,875 in cash, including 73 twenty-dollar bills. In addition, the State presented testimony from police officers that this quantity of cocaine was more than an amount typically associated with personal use, and that the amount of cash and denomination of the bills found were consistent with selling drugs.

¶11    Carney does not direct us to binding authority to support his contention that this evidence was insufficient as a matter of law for a jury to reasonably infer that he intended to sell at least some of the cocaine at issue.

Citing *State v. Wilson*, 180 Wis. 2d 414, 509 N.W.2d 128 (Ct. App. 1993), he argues that intent to deliver may be inferred only if there is additional evidence indicating drug sales, such as evidence of packaging materials, scales, weapons, pay-owe sheets, or digital communications reflecting sales. *Wilson*, however, does not mention these items or discuss what evidence is necessary to prove intent to deliver. Instead, the issue in that case is whether the jury was properly instructed about indirect delivery of a controlled substance. *Id.* at 418. Similarly, the *Romero* case cited by Carney does not discuss the evidence necessary to prove intent to deliver. The sole issue in that case is whether there was probable cause for a search warrant based in part on statements of an unnamed person. *State v. Romero*, 2009 WI 32, ¶2, 317 Wis. 2d 12, 765 N.W.2d 756.

¶12 Carney has not demonstrated that "additional indicators of trafficking" are "critical elements" to a finding of intent to deliver.[2] Carney contends that "the existence of cash [and] drugs does not automatically equate to intent to deliver." This general point is true as far as it goes, but as an argument here it fails to take into account incriminating evidence that the jury was free to consider. The issue is not whether the incriminating evidence *compelled* the jury to find him guilty of possession of cocaine with the intent to deliver, but whether

---

[2] Carney also refers to "*State v. Hanson*" as a purported case stating that "intent cannot be inferred solely from quantity without contextual indicators of distribution." None of the citations provided are associated with a case by that name, and none of the citations lead to cases dealing with the proof required for a conviction on a charge of possessing drugs with intent to distribute them. Carney also cites a number of cases from other jurisdictions, which, even to the extent they address the issues in this appeal, are not binding on this court. *See United States v. Martorano*, 709 F.2d 863 (3d Cir. 1983); *Commonwealth v. Harvard*, 64 A.3d 690 (Pa. Super. 2013); *United States v. Boissoneault*, 926 F.2d 230 (2d Cir. 1991).

the evidence supported a *reasonable inference* that he intended to deliver cocaine.[3] *See Poellinger*, 153 Wis. 2d at 506-07.

¶13 Nor has Carney demonstrated inconsistency in the jury's verdicts that would undermine his conviction for possession of cocaine with intent to deliver. Carney points out that the jury returned of a verdict of guilty on the lesser charge of heroin possession, and from this he argues that the cocaine and heroin possession with intent to deliver charges must logically stand or fall together because the drugs were found together and prosecuted under the same theory. But this rests on the false premise that one delivery charge depended on the other delivery charge. These were separate charges for distinct conduct, with proof that varied between the cocaine and the heroin. Carney gives us no reason to think that the jury did not properly consider each charge separately based on the evidence relevant to that charge.

¶14 In sum on this issue, because Carney has not met his "heavy burden" of showing that the evidence was insufficient to support a reasonable inference that he was guilty of possessing cocaine with the intent to deliver, we affirm the circuit court's decision with respect to the sufficiency of the evidence. *See Beamon*, 347 Wis. 2d 559, ¶21.

¶15 We now turn to Carney's assertion that the State engaged in prosecutorial misconduct. Carney asserts that the prosecutor's statements about the immunity granted to Durante Carr constituted "improper bolstering [and]

---

[3] At some points, Carney seems to suggest that the evidence was insufficient to support the jury's verdict on the cocaine charge because his conviction rested on nothing more than being in a vehicle with drugs. As we have explained, the evidence at trial amounted to far more than Carney merely being in a vehicle in which drugs were found.

vouching for this witness" that unduly influenced the jury. We reject this contention because Carney fails to develop it in any way.

¶16    It is standard practice for a circuit court to instruct a jury, as it did in this case, that a witness who has received immunity "like any other witness, may be prosecuted for testifying falsely" and that the jury "should consider whether receiving immunity affected the testimony and give the testimony the weight … it is entitled to receive." *See* WIS JI—CRIMINAL 246 (2000). Furthermore, as this court has stated, informing the jury that a witness is testifying subject to an immunity agreement "'is not likely to bolster his [or her] credibility'" but might "'have the opposite effect, by imputing a motive for the witness's testifying as the prosecution wants … regardless of the truth.'" *See State v. Lammers*, 2009 WI App 136, ¶19, 321 Wis. 2d 376, 773 N.W.2d 463 (quoted source omitted). We recognize that Carney advocates for himself, but he completely fails to explain how the prosecutor's comments were improper under the law or infringed his rights. We affirm the circuit court's decision with respect to prosecutorial misconduct on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court may decline to review arguments that are undeveloped and unsupported by authority).[4]

---

[4] Notably, none of the three opinions that Carney cites in purported support of the claim of prosecutorial misconduct involve a prosecutor discussing a witness's immunity. In *United States v. Young*, 470 U.S. 1, 18 (1985), the United States Supreme Court affirmed a conviction despite the prosecutor giving his personal opinion on the defendant's guilt in response to defense counsel's attacks on the prosecution's integrity. In *Berger v. United States*, 295 U.S. 78, 88-89 (1935), the court reversed a conviction because a prosecutor's misconduct, including "improper suggestions, insinuations, and, especially, assertions of personal knowledge," was so "pronounced and persistent" that it likely had a consequential effect on the jury. In *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986), the court concluded that a prosecutor's improper comments during closing argument, which included "offensive comments reflecting an emotional reaction to the case," did not violate due process.

**Conclusion**

¶17 For the foregoing reasons, the judgment of conviction and circuit court orders denying postconviction relief are affirmed.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.